## Woltemate's Appeal. Ditsche's Estate.

86    219
41SC 1620

1. The Act of April 27th 1855, gives illegitimate children the right to inherit from the mother, and the mother from the children, but does not enable the children to inherit from each other.

2. Grubb's Appeal, 8 P. F. Smith 55, and Steckel's Appeal, 14 Id. 493, affirmed.

February 5th 1878.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term 1875, No. 220.

Appeal of Rosalie Woltemate, from the decree of the court confirming the report of the auditor upon the account of the administratrix of Xavier Ditsche, deceased.

Xavier Ditsche died intestate, in 1871, leaving a widow, the accountant, but no issue, nor father, nor mother.   A brother, Conrad, and sister, Rosalie, survived him, the latter being intermarried with Henry C. Woltemate.   The auditor found that Xavier, Conrad and Rosalie were the illegitimate children of Elizabeth, Ditsche, who died in 1844.   The balance of the fund for distribution, $15.-892.45, was claimed by the accountant, as the widow of the intestate, on the ground that he had died without heirs or known kindred. Rosalie and Conrad each claimed $3973.11, one-half the balance, after deducting the widow's share, as sister and brother of the intestate, on the ground that they were entitled, even if illegitimate, under the third section of the Act of April 27th 1855, Purd. Dig. 810, pl. 40.   The auditor held that Rosalie and Conrad were not sister and brother of Xavier Ditsche, nor were they entitled to inherit from him under the Act of 1855, and awarded the whole fund to the widow.   Rosalie excepted to this report, but the court dismissed the exceptions and confirmed the same, when she took this appeal.

*W. Wynne Wister, Jr.,* and *Henry M. Phillips,* for appellant.— The third section of the Act of 1855 provides : " Illegitimate children shall take and be known by the name of their mother.   And they and their mother shall respectively have capacity to take or inherit from each other personal estate, as next of kin, and real

[Woltemate's Appeal.]

estate as heirs in fee simple; and as respects said real or personal estate, so taken and inherited, to transmit the same according to the intestate laws of this state." The appellant was within the spirit and the language of this act. The words, "and they and their mother shall respectively have capacity to take and inherit from each other," create between the illegitimate children of the same mother a capacity to take and inherit from each other. They shall *respectively* take from *each other*, means, *each one from each.*

*B. F. Fisher* and *George W. Thorne*, for appellee.—The intention of the act is that illegitimate children as a class, and their mothers as a class, should have the capacity to inherit, the one class from the other; but it did not create such a capacity between the children, one to another. The construction of the act, in Opdyke's Appeal, 13 Wright 373, Grubb's Appeal, 8 P. F. Smith 55, and Steckel's Appeal, 14 Id. 493, sustains this construction.

The judgment of the Supreme Court was entered, February 11th 1878,

PER CURIAM.—The interpretation heretofore given to the Act of April 27th 1855, relating to illegitimates, is, that the inheritance of estates is confined to the mother and the illegitimate child, but extends from either to the other: Opdyke's Appeal, 13 Wright 373; Grubb's Appeal, 8 P. F. Smith 55; Steckel's Appeal, 14 Id. 493. This is in accordance with the precise language of the act, to wit: "And they (illegitimate children) and their mothers shall respectively have capacity to take or inherit from each other." This has been held to be the extent to which the legislature opened the door to illegitimates. As the mother of both the brother and sister, whose supposed relationship had produced this controversy, died in 1844, not only before the passage of the Act of 1855, but long before the death of the intestate, Xavier Ditsche, there was no link in existence at the time of his death, to bind the brother and sister to each other in a legal bond. Xavier could not transmit to his mother, while his mother only if alive could have transmitted to her child, his sister. There was therefore no relationship between Xavier and Rosalie through which his estate could come to her, unless it be held that the purpose of the Act of 1855 was to legitimate bastards, an intent distinctly denied in Grubb's Appeal, and reaffirmed in Steckel's Appeal.

Decree affirmed at the cost of the appellant, and appeal dismissed.