## Jane Neil's Appeal.

1. The mother of illegitimate children, by the Act of April 27th 1855, is rendered competent to inherit from them as though they were legitimate.

2. The act does not render the children legitimate for any other purpose than to take and transmit the real and personal estate so taken and inherited according to the intestate laws of the state.

November 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, and TRUNKEY JJ. STERRETT and GREEN, JJ., absent.

Appeal from the Orphans' Court of *Washington county :* Of October and November Term 1879, No. 298.

Appeal of Jane Neil from the decree of the court confirming the report of the auditor appointed to distribute the estate of her husband, Samuel J. Neil, deceased.

Samuel J. Neil was the illegitimate son of Hannah Thompson. He died in the year 1876, seised of a tract of land, intestate, without issue, and left surviving him his mother, Hannah Thompson, and a widow, Jane Neil.

The real estate belonging to the decedent was sold, under an order of the Orphans' Court, for the payment of debts. The balance of the purchase-money, left in the hands of the administrator after the payment of debts, was the fund for distribution and the subject-matter of this controversy.

This, it was admitted, must be distributed as realty, under Act of April 8th 1833, sec. 18, Purd. Dig. 810, pl. 37. The widow claimed the whole fund, and the mother claimed the entire estate, subject to the widow's dower.

The auditor awarded the entire fund to Hannah Thompson, subject, however, to a life-estate in the one-half to the widow. The court, Willson, P. J. (of the Fourteenth Judicial District), affirmed this finding of the auditor in an opinion saying :

" The two exceptions are to the same point, and both have reference to the effect of the Act of the 27th of April 1855, conferring inheritable capacity on the mother and child, in cases of illegitimate children. The widow, in claiming the whole of the fund for distribution, bases her right to it on the 10th section of the Act of the 8th of April 1833, which provides that, ' in default of known heirs or kindred, competent as aforesaid, the real estate of such intestate shall be vested in his widow,' &c. On the other hand, Hannah Thompson claims that she is entitled to the whole of the fund for distribution, under section 3 of the Act of the 27th of April 1855, subject to the rights of the widow to the interest in the one-half of said fund, during the life of the widow. In behalf of the widow, it is claimed, that the Act of the 27th of April 1855, has no effect except in cases where, without that act, there would

11 NORRIS—13

[Neil's Appeal.]

be an escheat. If this is correct, it would seem that the decision in Opdyke's Appeal, 13 Wright 373, was erroneous; as in that case there could not have been an escheat, there being a legitimate child competent to take, and yet the illegitimate children were held to be equally entitled, with the legitimate child, in the distribution of their mother's estate. See also Forsythe's Appeal, Leg. Int., vol. 36, p. 28. In the present case it is a matter of no importance how the mother takes, if she is entitled to take at all. The intestate dying without children, the question whether the mother would take along with children, does not arise. The statute declares that she shall have capacity to take his real estate, as an heir, in fee-simple, and, in the absence of any other person to share with her, as an heir in fee-simple, she is entitled to take the whole of her son's real estate, subject to the rights of the widow therein. The statute endows the mother and child with capacity to inherit from each other, but does not undertake to make the child legitimate; nor does it confer any inheritable capacity on any other persons than the mother and the child. Where the evidence shows that they are the only persons who have this capacity to inherit from each other, then the right of the survivor to take the whole of the estate of the decedent, is under the Act of 1855, beyond any doubt. That the act makes a change in the provisions of the Act of the 8th of April 1833, in regard to the descent and distribution of real and personal estates, is well settled; it being said by Judge AGNEW in Opdyke's Appeal, *supra*, that, 'when the Act of 1855, declared those born out of lawful wedlock should inherit from their mother, and their mother from them, it declared that, which, to this extent, is directly repugnant to the former law, and to the same extent therefore, that law is repealed,' and to the same effect, in the case of adopted children, is the ruling in Ann Johnston's Appeal, 6 Norris 437. As the evidence established the fact that Samuel J. Neil was the son of Hannah Thompson, the auditor was right, under the Act of 1855, in awarding to her the whole of the fund, subject to the widow's rights in the one-half thereof.

"The exceptions, therefore must be dismissed and the report confirmed."

From this decree the widow took this appeal.

*Dougan & Todd*, for appellant.—The mother contemplated by the Act of 1833, was *competent*—qualified; fit; having legal *power*—because of her propinquity to the intestate; the mother of an illegitimate is only a creature of the legislative will, designed to answer a particular emergency, and having the *passive* attribute of *capability*. We contend that, in passing the Act of 1855, the legislature did not intend to make the claim of a mother of an illegitimate as to realty, paramount to the claim of his wife. Giv-

ing such a mother inheritable blood—endowing her with capacity to take *at all*—and investing her with the qualifications requisite to defeat the operation of the tenth section of the Act of 1833, are vastly different things.    The words mother and heir are not synonymous as they are used in the Acts of 1833 and 1855.

If a person can be found competent to inherit realty under the Act of April 8th 1833, the law gives that person the preference. If no such person can be found, in the case of illegitimates, the realty is transmitted under the Act of 1855.    If, indeed, the legal effect of the Act of 1855 was to make a bastard the son of his mother, and to make the woman who gave him birth, his mother, then are illegitimate children legitimatized, and the mother of an illegitimate is " competent as aforesaid."    That such was not the intent of the act is clearly shown in Grubb's Appeal, 8 P. F. Smith 55; Steckel's Appeal, 14 Id. 493; Woltemate's Appeal, 5 Norris 219.

Had the Act of 1855 given the illegitimate a mother—legitimated him—such a mother might have been competent to take his realty under the fifth section of the Act of 1833 ; she would have been the species of heir contemplated in that law.    However, as the illegitimate remains as he was before the Act of 1855 was passed, having no mother, the award of his realty to one who does not answer the requirement of the fifth section, is not only a violation of the proprieties of legal reasoning, but it is introducing, without apparent warrant, an element not in harmony with the intestate system.

*Freeman Brady, Jr.*, for appellee.—There were common-law disabilities engrafted on our intestate system.    The legislature intended to remove these, and apt words were used to accomplish this intent. The act gave to the illegitimate henceforth a name, that of his mother, and endowed him with inheritable capacity, but confined his right to take and transmit estates to certain defined limits, but within the scope of the limitation the classes intended to be benefited take as large an interest as the same classes do where the children are born in lawful wedlock—not that the children were legitimated.

The mischief to be remedied consisted in this, that when an illegitimate died intestate, without issue, the right was denied to persons sustaining the relation of mother and child to inherit respectively each from the other, under such circumstances, as they would have done had the child been legitimate.

There were no other parties. either by the letter or spirit of this law, intended to be benefited but these.    The wife of the illegitimate under this construction takes just such an interest in her husband's estate, as the wife of the man who was born in lawful wedlock—no greater, no less.    This is consonant with every principle of right and justice, and accomplishes the legislative intent.

[Neil's Appeal.]

The judgment of the Supreme Court was entered November 28th 1879,

PER CURIAM.—The Act of April 27th 1855, expressly provides that illegitimate children, with their mother, shall respectively have capacity to take and inherit from each other personal estate as next of kin, and real estate as heirs in fee-simple.   Words could hardly have been found to express more clearly the idea that so far as respects each other the bar of legitimacy is removed.   Of course the Act of 1833 is so far modified where it provides, that in default of known heirs or kindred, competent as aforesaid, the widow shall be entitled to the whole estate.   The mother of illegitimate children, by the Act of 1855, is rendered competent to inherit to them as though they were legitimate.   It is true that the act does not render the children legitimate for any other purpose than to take and transmit the real and personal estate so taken and inherited according to the intestate laws of this state. The cases cited and relied on by the learned counsel for the appellant all confirm this view.   The precise point, however, had not been decided, and it seems reasonable that the costs of this appeal should be paid from the estate of the intestate, and to this the counsel of the appellee makes no objection.

Decree affirmed and appeal dismissed; the costs of this appeal to be paid from the estate of the intestate.