# Estate of Amanda McCully, Deceased. Appeal of Lizzie Graham et al.

*Illegitimates—Inheritance from—Escheat.*

Under the law of Pennsylvania there is no right of inheritance from an illegitimate child of same mother which inures to collaterals in either direction except as provided in the acts of assembly. The acts were not designed to legitimatize bastards.

The legitimate children of a woman cannot inherit from a bastard child of their mother, and, the mother and grandmother of the bastard being dead, her estate passes to the commonwealth by way of escheat, she having died intestate.

Argued Oct. 9, 1899. Appeal, No. 82, Oct. T., 1899, by Lizzie Graham et al., from decree of O. C. Phila. Co., Oct. T., 1897, No. 108, dismissing exceptions to adjudication of the

orphans' court declaring an escheat.  Before RICE, P. J., BEA-
VER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and
BEEBER, JJ.  Affirmed.  Opinion by BEAVER, J.

Exceptions to adjudication.  Before the court in banc.

At the audit, ASHMAN, J., filed the following adjudication:

Amanda McCully, who was sometimes known as Maud Hud-
dell, died at Philadelphia, April 13, 1896, intestate, unmarried
and without issue.  According to the testimony of the account-
ant, whose affidavit is attached, the decedent was fifty-two
years old at her death and was the illegitimate child of Jacob
Dickart and Mary Rowan, who were never married to each
other and both of whom died before the decedent.  The grand-
mother on the mother's side of the decedent also predeceased
her.  Jacob Dickart married another woman (name unknown)
and had by her two children.  Mary Rowan married Richard
Andrews and had by him eight children—the names of the said
children are given in the affidavit.

The commonwealth claimed the fund by way of escheat, on
the ground that no person was in existence, who, by the acts of
assembly conferring certain heritable qualities upon legitimates,
would have been entitled to claim it.  The position so taken is
sustained by this court in Kennedy's Estate, 20 Phila. 83.  The
legislation on the subject was there reviewed and it was held
that the acts were not designed to legitimate bastards; that
where an illegitimate left surviving illegitimate brothers and
sisters, a statutory capacity was conferred upon the latter to
inherit the property of the deceased; but that where the illegiti-
mate left surviving a legitimate brother or sister, issue of the
same mother, such legitimate was left as at the common law
and could not come in upon the estate of the deceased illegiti-
mate; the single exception being where the estate came from
the common mother: Opdyke's Appeal, 49 Pa. 373.  The ques-
tion as to the legislative intent and as to the policy of such
legislation is an interesting one, but does not seem to be open
to discussion.  The estate in the present instance was person-
alty acquired by the decedent herself, and none of it came from
the mother or grandmother.  The facts as to the death of the
decedent without father or mother or grandmother, husband or

children or illegitimate brother or sister by the mother surviving, were admitted by the parties interested. The auditing judge, therefore, finds that an escheat has occurred.

The balance remaining is $782.47, which is awarded to Samuel E. Cavin, Esq., deputy escheator, for the use of the commonwealth.

And now, May 20, 1898, the account is confirmed nisi.

Exceptions thereto were filed as follows:

And now, to wit: June 1, 1898, Lizzie Graham, Richard A. Patterson, William Hargesheimer, Rachel Hargesheimer, James Hargesheimer and Kate Andrews, by their attorney, Joseph P. McCullen, except to the adjudication of Honorable WILLIAM N. ASHMAN, auditing judge, filed May 20, 1898, and assign the following as grounds for excepting:

1. The learned auditing judge erred in finding and reporting that the decedent's estate had escheated.

2. The learned auditing judge erred in awarding the balance of the estate, the subject of the account, unto Samuel E. Cavin, Esq., deputy escheator, for the use of the commonwealth.

3. The learned auditing judge erred in not awarding the balance of the estate, the subject of the account, unto the exceptants, the legitimate sisters and the issue of the legitimate sisters of the decedent.

The court below after argument entered a short order dismissing exceptions and confirming adjudication, but filed no opinion. Lizzie Graham et al. appealed.

*Errors assigned* were (1–3) in dismissing exceptions to the adjudication. (4) In confirming the adjudication.

*Joseph P. McCullen,* for appellants.—It is conceded that the claim of legitimate children to inherit from an illegitimate child, born of the same mother, accords with natural justice and reason, as the learned court below has said.

. The Act of April 27, 1855, P. L. 368, is a remedial one and as such is entitled to a liberal construction and to an interpretation that will render effective the intent to set forth in its title that there should be a just transmission of property. This theory is sustained in a dissenting opinion by Mr. Justice

SHARSWOOD in Grubb's Appeal, 58 Pa. 55, said dissenting opinion not being reported but appearing of record to January term, 1868, No. 184.

Other authorities which may be referred to are Opdyke's Appeal, 49 Pa. 373, and Woltemate's Appeal, 86 Pa. 219. Since the decision of the latter case there has been passed the Act of June 5, 1883, P. L. 88.

It seems to have been assumed that legitimate children had the right to so inherit, and by this act it is declared that the illegitimate shall take from the illegitimate brother or sister " in the same manner as children born in lawful wedlock " (of the same mother) would take from them.

There is no ruling of this Court or of our Supreme Court against the theory for which the appellants contend, and the decisions of the courts of other states have been favorable to such theory : Ellis v. Hatfield, 20 Indiana, 101 ; Lewis v. Eutler, 4 Ohio, 354 ; Riley v. Byrd, 3 Head. (Tenn.), 20 ; Powers v. Kite, 83 N. Carolina, 156 ; Burlington v. Fosby, 6 Vermont, 83 ; Butler v. Land Co., 84 Ala. 384 ; Garland v. Harrison, 8 Leigh, 368.

The thought and purpose in the legislative mind was to fully effectuate, in every way, the legal relationship on the maternal side.

That which the learned court below conceded " was consonant with natural justice and reason," it is respectfully submitted, is the law in this case, and it is asked that the decree of the learned court be reversed, to the end that the property of the deceased illegitimate shall go to those of her blood, rather than to the commonwealth as an escheat.

*Joseph T. Ford*, for appellee.—At common law no inheritable interest could be conveyed from an illegitimate except to heirs of his own body. Our legislature has only changed this rule, first, by the Act of April 27, 1855, P. L. 368, cited in appellants' paper-book, providing that illegitimates and their mother may inherit from each other; second, by the Act of June 5, 1883, P. L. 88, also cited in appellants' paper-book, providing that illegitimates may inherit from each other; and, third, by the Act of June 14, 1897, P. L. 142, also cited by appellants, providing that the grandmother may inherit from an illegitimate,

and the illegitimate from her. In all this legislation it will be observed that there was a reciprocity of privileges conferred. Each could inherit from the other. This Court is now asked to decide that legitimate children shall inherit from an illegitimate born of the same mother, while in no event can the illegitimate inherit from the legitimate. Notwithstanding the ingenious argument of the learned counsel for the appellants, who seeks to include legitimates within the meaning of these acts, they cannot, of course, be so extended, since the words expressly limit their benefits, and by no process of reasoning can the meaning of this word be enlarged so as to include an entirely different class.

It is respectfully submitted that neither the decisions of the courts of other states nor the dissenting and unreported opinion of Mr. Justice SHARSWOOD should be allowed to influence this Court in the determination of this case. The decisions of the Supreme Court in Grubb's Appeal, 58 Pa. 55, and in Woltemate's Appeal, 86 Pa. 219, both of which are cited in appellants' paper-book, clearly govern this case.

OPINION BY BEAVER, J., December 11, 1899:

A single question is presented by the several assignments of error in this case. Is there, under the statutes of Pennsylvania, a right of inheritance by legitimate children from an illegitimate child of the same mother? The status of an illegitimate child at the common law is thus stated by Blackstone: "The incapacity of a bastard consists principally in this, that he cannot be an heir to any one, neither can he have heirs but of his own body, for, being nullius filius, he is, therefore, of kin to nobody and has no ancestor from whom any inheritable blood can be derived:" 1 Blk. Com. 459. Such incapacity remains in Pennsylvania, except as modified by statute. The Act of April 27, 1855, P. L. 368, as amended by the Act of June 14, 1897, P. L. 142, and the Act of June 5, 1883, P. L. 88, are the only statutes in Pennsylvania which enlarge the heritable rights of a bastard. The latter relates exclusively to illegitimates of the same mother inheriting from each other and does not in any way affect the rights of the parties claiming in this case. The act of 1855, supra, has been construed in Opdyke's Appeal, 49 Pa. 373, Grubb's Appeal, 58 Pa. 55, Steckel's Appeal, 64 Pa. 493,

Woltemate's Appeal, 86 Pa. 219. In all of these cases the courts carefully confine the effect of the statute to its exact wording. In Steckel's Appeal, supra, Mr. Justice SHARSWOOD, delivering the opinion of the court, says: "Had the legislature intended not merely that illegitimate children but the issue of illegitimate children should inherit, it would have been easy to have said so; but they seem carefully to confine the operation of the enactment to children taking from their mother, so as to exclude the case of grandchildren and grandmothers." The amendment of 1897 of the act of 1855, supra, gave to grandmothers and grandchildren the same rights as were conferred upon mothers and children by the act of 1855, but it went no further than that, and the same reasoning employed in the cases above referred to will apply to the present case. None of the statutes referred to conferred any heritable rights upon collaterals in either direction, except as provided in the act of 1883, supra.

It is unnecessary to add anything to the clear and convincing opinion of the auditing judge. The judgment is affirmed and the appeal dismissed at the cost of the appellants.