## Commonwealth v. Campagna

*Frank J. Zappalo*, for prosecutrix.
*Maurice H. Goldstein*, for defendant.

McDONALD, J., July 3, 1940.—This case is before the court in banc upon defendant's petition to dismiss proceedings in which an order has been made against him to contribute toward the support of a child born of the bigamous marriage of his son. The admitted facts are that defendant's son went through a marriage ceremony

with the prosecutrix at a time when he had been previously married to another woman who was still living and from whom he had not been divorced. Of this bigamous marriage a child (now four years old) was born. Two years after the birth of the child, defendant's son was divorced from his lawful wife. The bigamous marriage was never annulled, nor were the son and the prosecutrix ever lawfully married, but, on the contrary, the son deserted the prosecutrix and the child involved and went to Cleveland, Ohio, where he is now lawfully married to a third woman, and, we understand, has a child by her.

The child involved in this case has been in the custody of the prosecutrix since the desertion and is within the territorial jurisdiction of this court—as is also defendant. Both the child and the mother are indigent persons within the meaning of the law and they live with prosecutrix's parents. The prosecutrix's father is employed two days a week and is barely able to support himself and his wife. Defendant has, from time to time, contributed very small amounts of money toward the child's support and we believe that he is financially able to make the payments specified in the order of court.

The question now before the court is—is a paternal grandparent legally liable for the support of an illegitimate grandchild?

An illegitimate child is one which is not born in lawful wedlock, and that this child is such immediately results from the admitted facts before stated. So far as the law is concerned, the status of this child is the same as though no marriage had ever been attempted between prosecutrix and defendant's son. At common law, an illegitimate child was nullius filius and unless there is some statute in derogation of the common law this child is nullius filius and neither the father nor the paternal grandparents are legally liable for its support (the word support being used in its technical sense). In some jurisdictions it is held that where a putative father of a bastard child adopts such child into his home and so conducts himself

toward the child as to lead others to believe that it is his lawful child, he may be held liable in an action for support as though the child were legitimate, but we find, and we have been cited, no decision to that effect in Pennsylvania. We are not called upon to pass upon that question in this case, and we do not pass upon it, but we do say in passing that if we were called upon to pass upon that question our first inclination would be to make every effort to adopt such rule—although more thorough consideration might lead us to a different conclusion. For example, the effect of such ruling upon criminal prosecution of the father, the rights of inheritance between father and child and between the illegitimate child and other legitimate children of the father, and similar matters must all be given thorough consideration. The matter would become more complicated when the question is applied to the legal relationship between an illegitimate grandchild and other legitimate grandchildren and heirs of a paternal grandparent.

It may be argued that our statutes, providing for maintenance of an illegitimate child in fornication and bastardy proceedings or the proceedings provided by the Act of July 11, 1917, P. L. 773, as amended by the Act of July 21, 1919, P. L. 1075, are the statutes in derogation of the common law which are necessary to eliminate the common-law doctrine of nullius filius insofar as the father is concerned, but with such argument we do not agree. The orders for maintenance of an illegitimate child which may be made under these statutes are in the nature of penalties imposed for the offense committed and are not orders for support of the child in a technical sense. "Support" orders are within the exclusive jurisdiction of this court in this county, and in this county before the creation of this court and in other counties where "support" proceedings are still held in quarter sessions court the "support" proceedings were and are proceedings which are entirely separate and distinct from the misdemeanor indictments provided by the statutes referred to.

It may also be argued that, because a maternal grandparent is liable for the support of an illegitimate grandchild, a paternal grandparent should be equally liable. This may be so, but the answer lies in the fact that the legislature has decreed otherwise. An illegitimate child is bound to support its mother: Commonwealth v. Gross, 35 York 93; and a maternal grandmother is liable for the support of an illegitimate grandchild: In re McAllister, 31 D. & C. 4; but the situation with respect to maternal grandparents and their liability with respect to illegitimate grandchildren results from legislation which is in derogation of the common law. Section 15 of the Intestate Act of June 7, 1917, P. L. 429, expressly provides for inheritance as between an illegitimate child and its mother and maternal grandfather and grandmother, and as between an illegitimate child and other children of the same mother, whether legitimate or illegitimate. The Intestate Act of 1917 merely followed and enlarged upon the inheritance rights of illegitimates as such law had been previously expressed by statute and court interpretation. See Act of April 27, 1855, P. L. 368, Act of 1901, P. L. 639, Neil's Appeal, 92 Pa. 193, Opdyke's Appeal, 49 Pa. 373, Waesch's Estate, 166 Pa. 204, McCully's Estate, 12 Pa. Superior Ct. 78.

However, note the wording of a portion of the same section 15 of the Intestate Act of 1917:

"This section is not intended to change the existing law with regard to the father of such a child [an illegitimate], and his heirs and next of kin."

It thus becomes apparent that the legislature, in its wisdom, has seen fit to change the common-law status of an illegitimate child with respect to its mother and its maternal grandparents, but with respect to its father it has not seen fit so to do and, on the contrary, has expressly provided that the status of the child shall remain as heretofore. In other words, insofar as the father is concerned, an illegitimate child is still nullius filius, and the legislature has seen fit to leave the question of the

child's becoming a public charge to criminal proceedings which are perhaps, more expeditious and more efficacious than "support" proceedings. Personally, we can see no reason why the legislature may not enact laws making a father amenable in support proceedings in addition to the existing criminal responsibility and without interfering therewith and without granting to the father reciprocal inheritance rights, but the fact remains that it has not done so. To extend such support liability to a paternal grandparent without granting to such paternal grandparent a reciprocal right of inheritance would seem to be visiting the sins of a son upon a father, and with a vengeance. To extend such support liability to a paternal grandparent and to give such paternal grandparent reciprocal inheritance rights presents the question whether such grandparent, or parent, should be given the right to inherit an estate which an illegitimate child may have inherited from its mother or maternal grandparents under existing laws. The whole subject is so involved that it is one which requires the study and decision of a number of people, rather than of any one court.

The present proceeding before the court was instituted under The Support Law of June 24, 1937, P. L. 2045. So far as we know, there are no reported decisions under this act of assembly insofar as the liability of fathers or paternal grandparents for the support of an illegitimate child is concerned. The portion of the act involved is that portion of the third section which reads as follows:

"Section 3. Relatives Liable for the Support of Indigent Persons; Procedure to Enforce Support—(a) The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides, shall order or direct."

The purpose of The Support Law, of course, is to prevent, insofar as possible, persons from becoming public charges, and to prescribe the persons who are liable for the support of indigent persons, and the procedure to enforce such support. It has been established in this case that the child in question is an indigent person; that it resides in this county; and that defendant is, in fact, its grandfather. Is there, then, liability in this proceeding? We think not.

The section of the act in question is similar to section 1012 of The General Poor Relief Act of May 14, 1925, P. L. 762, which reads as follows:

"Section 1012. Relatives Liable for Support. The husband, wife, children, father, mother, grandparents, and grandchildren respectively of every poor person shall at their own charge, being of sufficient ability, relieve and maintain such poor person at such rate as the court of quarter sessions of the county where such poor person resides shall order and direct."

The General Poor Relief Act of 1925, above cited and partially quoted, does not apply to Allegheny County, but because of the similarity of the language of the act, as above quoted, to the language of the Act of 1937, above quoted, and which does apply in Allegheny County, it is interesting to note that, in other jurisdictions where the Act of 1925 does apply, it has been held that the use of the words "child", "children," "parents," etc., refers exclusively to a legal relationship between the parties.

For the reasons herein stated, we have held and ordered that the motion to dismiss the proceedings in this case be granted and that the order heretofore made against defendant be vacated. It is our opinion that, insofar as the father of the child is concerned, it is, in all respects, nullius filius, and that The Support Law was not intended to make a paternal grandfather liable for the support of a child born of his son's bigamous marriage and which child was never, in any way, legitimate.