# Thompson *v.* Delaware, Lackawanna & Western Railroad Company, Appellant.

*Negligence—Infant—Contributory negligence—Question for jury.*

1. In an action to recover damages for the death of a child seven years old, the case is for the jury where the evidence as to contributory negligence of the custodian of the child at the time of the accident, is conflicting.

*Negligence—Infant—Parent and child—Illegitimate child—Act of July* 10, 1901, *P. L.* 639.

2. Since the Act of July 10, 1901, P. L. 639, the mother of an illegitimate child is entitled to recover damages for the negligent killing of the child by the act of another.

3. While statutes which give a right to the personal representative or next of kin of a deceased to recover for tortious acts of others, should be construed strictly, yet inasmuch as they are remedial in providing a remedy for an obvious wrong, they should be construed liberally so as to carry into effect the remedial purpose.

618 THOMPSON *v.* DELA., L. & W. R. R. CO., Appellant.

4. The effect of the act of 1901, was to confer upon an illegitimate child, as between itself and its mother all the rights and privileges of a child born in lawful wedlock. The purpose of the act was to legitimate an illegitimate child as to its mother.

Argued Oct. 18, 1909. Appeal, No. 69, Oct. T., 1909, by defendant, from judgment of C. P. Wyoming Co., Oct. T., 1907, No. 51, on verdict for plaintiff in case of Mary Thompson v. The Delaware, Lackawanna & Western Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for death of an illegitimate child seven years old. Before TERRY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $779. Defendant appealed.

*Error assigned* was in refusing to give binding instructions for defendant.

*E. K. Little* and *J. H. Oliver*, with them *D. R. Reese*, for appellant.—The mother of an illegitimate child has no right to recover for injuries resulting in the death of the child: Deichman v. Knecht, 11 Northampton, 231; Harkins v. R. R. Co., 11 W. N. C. 120.

Statutes in derogation of the common law must be strictly construed: Pettit v. Fretz's Ex'rs, 33 Pa. 118; Smith v. R. R. Co., 182 Pa. 139.

*Paul J. Sherwood*, for appellee.—By the act a child begotten out of lawful wedlock may be made as legitimate for all purposes by the subsequent marriage of the parents, as if begotten in lawful wedlock: McCausland's App., 213 Pa. 189.

When the legal status of parent and child is established, the right of the action attaches: Com. v. Henderson, 172 Pa. 135; Com. v. Keystone Ben. Assn., 171 Pa. 465; Com. v. Jones, 4 Pa. Superior Ct. 362.

OPINION BY ORLADY, J., March 3, 1910:

The plaintiff recovered a verdict of $779, as damages for

the alleged negligent killing of her son, aged seven years. The questions involved are, first, the right of a mother of an illegitimate child to recover for injuries sustained by the child resulting in his death, and, second, the question of contributory negligence, which may be first considered and dismissed as without having any merit. This latter branch of the case depended upon controverted facts, and the testimony was of such a character, that under authority of Jones v. Traction Co., 201 Pa. 344; Saxton v. Railways Co., 219 Pa. 492; Addis v. Hess, 29 Pa. Superior Ct. 505; Distasio v. Traction Co., 35 Pa. Superior Ct. 406; Davis v. Railway Co., 222 Pa. 356, it was purely a question for the jury and not for the court to say whether the custodian of the child was guilty in any degree of contributory negligence. The fifth, sixth and seventh points submitted by the defendant were affirmed by the court, and in the general charge this phase of the case was fully and clearly brought before the jury to give proper effect to the conduct of the person who had the child in charge.

The other question is of a more serious character, and we are without direct authority in this state in regard to it. Prior to the act of July 10, 1901, the mother of an illegitimate child could not recover in such a case.

The Act of April 26, 1855, P. L. 309, provides that the persons entitled to recover damages for any injury causing death, shall be the husband, widow, child or parent of the deceased and no other relative. By the Act of May 14, 1857, P. L. 507, it is provided that in any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock, and cohabit, such child or children shall thereby become legitimated and enjoy all the rights and privileges as if they had been born during the wedlock of their parents. The next step in this remedial legislation is in the Act of April 6, 1868, P. L. 67, which provides, that all marriages theretofore contracted between parties within the degree of affinity as prescribed by act of 1860, of which issue is born, are thereby legalized, and the child or children of such marriages shall have all the rights and privileges of children born in lawful wedlock. This was followed

by the Act of June 5, 1883, P. L. 88, which declares that illegitimate children born of the same mother, and leaving as survivors neither mother nor issue capable of inheriting, shall have capacity to take and inherit from each other personal property as next of kin and real estate as heirs in fee simple, in the same manner as children born in lawful wedlock. This was evidently enacted to remedy the effect of Woltemate's App., 86 Pa. 219, in which it was held that the act of 1855 did not enable illegitimate children to inherit from each other. The act of June 14, 1897, amending the third section of the act of 1855, provides, that illegitimate children shall take and be known by the name of their mother, and they and their issue and their mother and grandmother shall respectively have capacity to take or inherit from each other personal estate as next of kin, and real estate as heirs in fee simple; and as respects said real or personal estate, so taken or inherited, to transmit the same according to the intestate laws of this state.

Prior to 1874, a great number of private or special acts of assembly were passed, providing that certain named illegitimate children of certain named parties, "shall be legitimated, and shall have and enjoy all the rights and privileges of children born in lawful wedlock, with the right to inherit and transmit any estate whatsoever."

The next act on the subject is the one which is vital to this case, that of July 10, 1901. It is entitled an act, "to regulate and define the legal relation of an illegitimate child or children, its or their heirs, with each other, and the mother and her heirs." The first section is as follows: "That illegitimate children shall take and be known by the name of their mother, and the common-law doctrine of nullius filius, shall not apply as between the mother and her illegitimate child or children, but the mother and her heirs and her illegitimate child and its heirs, shall be mutually liable one to the other, and shall enjoy all the rights and privileges one to the other, in the same manner, and to the same extent, as if the said child or children had been born in lawful wedlock." The second section provides, "The mother of an illegitimate child, her heirs

and legal representatives, and said illegitimate child or children, its or their heirs and legal representatives, shall have capacity to take or inherit from or through each other, personal estate, as next of kin, and real estate as heirs in fee simple or otherwise, under the intestate laws of this commonwealth, in the same manner and to the same extent, subject to the distinction of half-bloods, as if said child or children had been born in lawful wedlock." Section 4 is as follows: "The intent of this act is to legitimate an illegitimate child and its heirs, as to its mother and her heirs; but it is not intended to change the existing laws with regard to the father of such children, or their respective heirs or legal representatives."

The plaintiff was originally married to a man named Ward, who died more than a year prior to the birth of her son, Willie, and after his birth she was married to her present husband. While the action was originally brought in the name of George Thompson and Mary Thompson, the record was subsequently amended by striking therefrom the name of George Thompson, it being conceded that he was improperly joined with the mother as a plaintiff.

In construing the act of 1901 we are aided by many decisions in arriving at a proper interpretation of the legislative will; all of its parts are to be taken together, and the legislative intention so ascertained will prevail over its literal import, or its strict letter; the title may be considered, and the construction most agreeable to reason and justice shall be adopted as embodying the intention of the lawmakers, for it will not be presumed that the legislature contemplated unreason or injustice. While this is a statute in derogation of the common law, and as such it is to be strictly construed, yet it is not to be extended by implication beyond the legal import of the words used, so as to embrace cases or acts not clearly described by such words, or to bring them within a prohibition or penalty of such a statute. A strict construction does not mean that words will be so restricted as not to have their full meaning, and that the rule of strict construction will not be applied with such technicality as to

defeat the purpose and the true intent or meaning of the statute. Statutes which give a right to the personal representative of a deceased for tortious acts, should be construed strictly, but on the other hand, it is just as positively held, that such statutes are remedial inasmuch as they provide a remedy for an obvious wrong, and that in this sense they should be construed liberally. They are made to supply defects or abridge superfluities in the law, and in construing any statute we are to keep in mind the old law, the mischief and the remedy intended; that which is within the mischief intended to be remedied is considered within the statute although not within the letter, and that which is not within the mischief is not within the statute, though within the letter.

In Moritz v. Garnhart, 7 Watts, 302, the Supreme Court held that the grandfather of an illegitimate child might maintain an action on the case for the abduction of the illegitimate child of his daughter, Judge Gibson saying, "Though a bastard be not looked upon as a child for any civil purpose, the ties of nature are respected in regard to its maintenance, and can it be said, having bestowed his affection on this child and reared it by his bounty, he shall not be permitted to exercise the rights of a father to it, as against an intermeddler. It would be a reproach to the law if he should not. The stern simplicity of feudal principles is gradually bending to the more complicated relations of a milder civilization." Prior to 1901, the rights even of the mother of an illegitimate child were very circumscribed.

In Bartolett v. Achey, 38 Pa. 273, it is said, the meaning of the statute if plain, is to be followed, notwithstanding, as in any other case. Strict construction is not the same thing as construing everything to defeat the action; this is not what is meant by the expression. In Lau Ow Bew v. United States, 144 U. S. 47, the rule is stated, "Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion," citing many authorities. Harkins v. Phila. & Read. R. R. Co., 11 W. N. C. 120 (decided in 1881), held that the mother of a bastard child

is not a parent within the meaning of the act of April 26, 1855, and cannot recover damages for injuries resulting in his death, and this was accepted by the profession as conclusive until the act of 1901 was enacted. In Kerr v. Penna. R. R. Co., 169 Pa. 95 (decided in 1895), it was held that a married woman who had been deserted by her husband, could main-tain an action in her own name, under the acts of 1851 and 1855, to recover damages for the death of a minor child of herself and husband, Judge FELL saying, "Her legal relation to her son was the same as if her husband had been dead. It is out of this relation that the right to recover in an action for the death of a child grows. The measure of damages is the pecuniary loss sustained, and the loss arises because of the right of the parent to the child's earnings until he is of age, or of the expectation of pecuniary advantage after the minority of the child because of the continued existence of the family relation," and in Huntingdon & Broad Top R. R. Co. v. Decker, 84 Pa. 419, the Supreme Court held, that if the deceased leave a husband, he alone is clothed with the right of action; if the wife is the survivor, she is entitled to bring suit; if there be neither surviving husband or widow, the right of action is given to the children, and if there be neither husband nor widow nor children surviving, it is given to the parents of the deceased. This court held in Haggerty v. Pittston Borough, 17 Pa. Superior Ct. 151, that the purpose of these statutes is to make provision for members of the family of the deceased who might naturally have calculated on receiving support or assistance from the deceased had he survived. The law treats the value of the life lost as a species of property, Gulla v. Lehigh Valley Coal Co., 28 Pa. Superior Ct. 11; Cooley on Torts,* 269; North Penna. R. R. Co. v. Robinson, 44 Pa. 175, and in a case where the father brought his action to recover damages for the death of his minor daughter, who left neither mother, husband nor children to survive her, and the father died before the case had been brought to trial, the personal representative of the father was rightly substituted and could prosecute the suit.

In interpreting this statute, the question is not, Could the

right of the mother of an illegitimate child to maintain the action have been more clearly expressed? but, Do the words used clearly convey the legislative intention of her right to maintain such an action? There is no ambiguity in its provisions; it is the last step taken in a long series of enactments and adjudications, involving the same subject-matter, and each enactment is a step forward in the direction of relief and protection for the unfortunate mother of an illegitimate child, and of an increase of the rights of her offspring. By its very terms the old common-law doctrine of nullius filius no longer applies; the mother and her heirs, and the child and its heirs, shall be mutually liable one to the other, and shall enjoy all the rights and privileges one to the other, in the same manner, and to the same extent as if the child had been born in lawful wedlock, and the special declaration of intent is stated in unequivocal words to be, to legitimate an illegitimate child as to its mother. With this declaration of intention, can it be questioned that the object and effect of this statute was to change the status and capacity of an illegitimate child to the status and capacity of a legitimate child, and create the relation of parent and child for all purposes as if the latter had been born in lawful wedlock. These are the words used, and to our mind they can be interpreted in but one way. We held in Com. v. Gilkeson, 18 Pa. Superior Ct. 516, that children born prior to marriage, who have been legitimated by the subsequent marriage of their parents, are not liable to pay a collateral inheritance tax upon the estate passing from their father to them.

The last consideration of the question by the Supreme Court is in Com. v. Mackey, 222 Pa. 613, and it is there held in referring to this act of 1901, by Judge Brown that, not only are all the rights and privileges of a child born in lawful wedlock conferred upon any illegitimate child, as between it and its mother, but these rights and privileges are to be enjoyed in the same manner and to the same extent as if the child had been born in lawful wedlock . . . . the expressed purpose of the act is to legitimate an illegitimate child as to its mother, and, as a proper, logical and humane incident to such

legitimation to confer upon such child every right and privilege enjoyed by a child born to wedded parents. This act was intended to apply alike to the unfortunate mother and the helpless child and to remove all legal obstructions, as between them, that had theretofore existed by reason of the illegitimacy of the child.

As said by Judge WOODWARD in Killam v. Killam, 39 Pa. 120, the words used by the legislature were large enough to confer all the civil rights of legitimacy, and as it was a remedial and humane law, it ought not to be cramped in the construction.

The opinion of the learned trial judge in denying the motion for judgment for the defendant, fully justifies his disposition of all the matters raised by the questions involved.

The assignments of error are overruled and the judgment is affirmed.