499 A.2d 661

John K. BERRY, Sr., Administrator of the Estate of John K. Berry, Jr., Deceased and John K. Berry, Sr., in His Own Right,

v.

Cortland Orvel TITUS, Jr. and West Caln Township. Appeal of Mary C. BERRY.

Superior Court of Pennsylvania.

Argued June 4, 1985.

Filed Oct. 4, 1985.

Frank J. Marcone, Media, for appellant.

M. Cherry Sharon, Media, for appellee.

Before WICKERSHAM, BROSKY and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from the order of the Court of Common Pleas of Delaware County Orphan's Court Division, dismissing appellant's exceptions to an order that denied her proceeds from a distribution made pursuant to the Wrongful Death Statute, Act of July 9, 1976, P.L. 586, No. 142, Section 2, 42 Pa.C.S.A. § 8301. We reverse and order that appellant be awarded her proportional share of the proceeds pursuant to 20 Pa.C.S.A. § 2103.

Appellant, Mary Berry, is the mother of the decedent, John Berry, Jr., who was killed on June 29, 1980, when the motorcycle he was driving collided with a car. John Jr. was 15 years old at the time of his death. Appellee, John K. Berry, Sr. is the father of the decedent. At the time of John Jr.'s death, appellant and appellee had been divorced for sixteen months following 18 years of marriage. Appellant had left the marital home in the winter of 1978 and the parties divorced in February of 1979. The parties' children, John Jr. and Jacqueline, remained in the marital home with appellee.

On March 31, 1981, appellee, as administrator of his son's estate, commenced a wrongful death and survival action.[1] The actions were settled for the amount of $80,000.00. The net recovery, after deduction of attorney's fees and costs was $51,446.25. Of this net amount, $12,861.56 was apportioned to the survival action and $38,584.60 was apportioned to the wrongful death action. Appellee conceded that appellant shares in the portion allocated to the survival action. Appellee, however, contested any distribution of the proceeds from the wrongful death action to appellant, arguing that she had severed her ties with her son following her

1. Appellant states in her brief that she and appellee were listed as parties entitled to recover damages for the wrongful death of her son in the wrongful death and survival actions commenced by appellee. The original papers filed in the lower court regarding the wrongful death and survival actions have not been duly certified in the record on appeal, and we may not consider a fact which is not part of the record in this case. *See McAllonis v. Pryor,* 301 Pa.Super. 473, 448 A.2d 5 (1982); Pa.R.A.P. 1921.

separation and divorce from appellee, and had suffered no pecuniary loss as a result of her son's untimely death. Following a hearing, the lower court found as fact that only appellee supported John, Jr. following the separation and divorce, that appellant never requested visitation rights throughout the 16-month period between the divorce and her son's death, and that appellant saw her son "only sporadically and not at all during the 6-month period immediately preceding her son's death." The court concluded as a matter of law that appellant abandoned her parental connection with the decedent and suffered no pecuniary loss as a result of his untimely death. Thus, the court concluded that appellant was not entitled to share in the wrongful death action proceeds.

In the *Estate of Gilbert*, 342 Pa.Super. 82, 87, 492 A.2d 401, 404 (1985) we stated:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. *In re Estate of Cornell*, [336] Pa.Super. [594], [596], 486 A.2d 424, 425 (1984).

> This rule is particularly applicable "to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony." *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975). In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphan's Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. *In re: Estate of Damario*, 488 Pa. 434, 412 A.2d 842 (1980). However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts. *In re: Ischy Trust*, 490 Pa. 71, 415 A.2d 37 (1980).

In re *Estate of Dembiec*, 321 Pa.Super. 515, 519–520, 468 A.2d 1107, 1110 (1983).

Appellant testified that during the first year of the separation, she saw John Jr. every other weekend, but that appellee stopped the children from seeing her after she began living with her boyfriend. She also testified that she also phoned him and sent him cards and that following the divorce in February of 1979 until the time of his death, she constantly attempted to phone him. Appellant also stated that she saw John Jr. once after the divorce, and also during the week before his untimely death, when she, appellee, and John Jr. went to the family's campsite to celebrate John Jr.'s birthday. Appellant testified that she was aware of her son's smoking and drinking habits, and expected, or at least hoped, that John Jr. would live in with her in the near future.

Appellee corroborated the fact that appellant and deceased went camping the week before the fatal accident, and was aware that John Jr. visited her at least once and that appellant had phoned John Jr. Appellee did not deny that appellant visited John Jr. and Jacqueline, although he claimed he had no actual knowledge of her visits. He did state that the children may have hidden their relationship with appellant from him. Appellee also stated that appellant contributed no financial support following the parties' separation and divorce, though he acknowledged her contribution as a homemaker and part-time wage earner during the marriage. Moreover, he acknowledged that the marital home that had been purchased for $13,500.00 with an $11,-000.00 mortgage, had appreciated to $40,000.00 with over $30,000.00 in equity and that appellant transferred her marital interest in the home to appellee in exchange for $3,000.00 and six months of car payments. Appellant testified that she expected her share of the value of the home would be used by appellee to assist in their children's support and maintenance. Appellee also testified that following the separation and to the time of John Jr.'s death appellant was despondent and had attempted suicide. He

noted that appellant was beginning to recover sometime before John Jr.'s death.

The parties' other child, Jacqueline, was called in rebuttal by appellee's counsel. She testified that during the separation, appellant frequently visited the children at the parties' campsite, but that following the divorce, appellant only phoned them at the marital home. She testified that during the separation, appellant taught her how to drive. She also stated that appellee objected to her visiting appellant when appellant moved in with her boyfriend. She also stated she had begun to see appellant before she herself had married and admitted seeing appellant frequently up to the time of the hearing of August 14, 1984.

The purpose of the Wrongful Death Act is "to compensate certain enumerated relatives of the deceased for the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived." *Manning v. Capelli*, 270 Pa.Super. 207, 211, 411 A.2d 252, 254 (1979). "[O]nly those persons who stand in a family relation to the deceased are statutorily authorized to recover damages." *Id.* A "family relation" is defined to require a showing of pecuniary loss by the relatives seeking damages as a result of the wrongful death of the decedent. *Id.*, 270 Pa.Superior Ct. at 211, 411 A.2d at 255. A "family relation"

" '. . . [e]xists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts. The term 'family relation' as thus used does not embrace its comprehensive definition, but is confined to certain phases of family relation between the persons named in the act. . . . Before there can be any recovery in damages by one in that relation for the negligent death of another in the same relation, there must be a pecuniary loss.' " (Citation omitted).

*Manning v. Capelli, supra* 270 Pa.Super. at 211, 411 A.2d at 254 quoting *Gaydos v. Domabyl,* 301 Pa. 523, 529, 152 A. 549, 551–52 (1930).

In the instant case, the lower court's finding that appellant provided no financial support is belied by the testimony of both appellant and appellee. Both acknowledged the value inurring to the benefit of the children because of appellant's relinquishment of the majority of her share of the value of the marital home. The lower court's finding that appellant never saw John Jr. during the six month period immediately proceeding John Jr.'s death is likewise belied by the record. The Berry family, including appellant, appellee and John Jr., went camping one week prior to the fatal accident. Though there is support in the record for the lower court's finding that appellant never requested the court to make a visitation order, appellant, in point of fact, did visit her son following the separation. From these erroneous findings of fact, which findings are not predicated upon the credibility of the parties, the lower court concluded that no family relation was shown because appellant, in effect, abandoned John Jr. and suffered no pecuniary loss as a result of his untimely death. This conclusion is clearly erroneous.

The record demonstrates that appellant played an active role in raising John Jr. fourteen of his fifteen years while appellant and appellee lived as husband and wife. The lower court did not consider this. It is also unquestionable that appellant maintained her parental bond with the decedent following her separation from appellee. While indeed she was less involved in the day to day affairs of John Jr. following the marital discord, this, in part, as we glean from the record, was attributable to her own mental state and appellee's own actions to dissuade the children from interacting with her. The family camping outing one week before John Jr.'s death indicates that a semblance of the family unit was being maintained. On the record before us, the evidence fails to establish what the lower court found to be akin to abandonment of the parental connection

with the decedent, that is, a settled purpose to relinquish her parental claim or her failure to perform parental duties. *Compare* 23 Pa.C.S.A. § 2511(a)(1). We note that a finding of settled purpose to relinquish a parental claim in the context of a termination of parental rights proceeding, which we find instructive here, "requires an affirmative indication of a positive intent by the parent." *In Re Adoption of Wolfe,* 454 Pa. 550, 556, 312 A.2d 793, 796 (1973). Evidence of inaction and lack of interest "for a period of at least six months" will not conclusively establish a settled purpose. See *In Re Adoption of Wolfe, supra,* and 23 Pa.C.S.A. § 2511(a)(1). Here, "settled purpose" is not demonstrated.

█ Most importantly, we cannot agree that appellant failed to establish pecuniary loss as a result of her son's death. Though it is difficult to predict with reasonable certainty the expectation of future enjoyment by the parent of the efforts of a minor child had he lived to adulthood, a reasonable gauge for the court to follow is that parent's contribution, financial and otherwise, to the development of the child while he was living. *See* and *compare Manning v. Capelli, supra.* While it is true that appellee maintained physical custody of the decedent and provided his basic economic needs on a day to day basis following the parties' separation and divorce, appellant did contribute directly to the care and maintenance of the decedent the first fourteen years of his life. She also contributed to his maintenance by relinquishing the majority of her pecuniary interest in the marital abode for his benefit. On this record, we would conclude that appellant had an expectation of future enjoyment of her son's efforts had he lived to adulthood, and she, unlike the emancipated child in *Manning v. Capelli, supra,* stands in a family relation to the decedent.

The Order of the lower court is reversed and appellant shall be awarded her proportional share of the wrongful death proceeds pursuant to 20 Pa.C.S.A. § 2103.

Jurisdiction is relinquished.