690 A.2d 243

**Brenda HODGE, as Administratrix of the Estate of Tanisha Hodge and Brenda Hodge in her own right,**

v.

**M. LOVELAND, M.D., B. Wiseman, M.D., L. Nathan, M.D., Lawrence, M.D., Smith, M.D., S. Magos, M.D., Alan B. Zubrow, Gayathri Rao, M.D., Hospital of the Medical College of Pennsylvania, John or Jane Doe, M.D., (Fictitious Names) and John or Jane Roe, R.N., L.P.N. (Fictitious Names)**

**Appeal of Odessa Corbitt McGILL, Administratrix of the Estate of David Carroll.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1996.

Filed Jan. 27, 1997.

Reargument Denied March 25, 1997.

Diane C. Bernoff, Philadelphia, for appellant.

Richard I. Torpey, Huntingdon Valley, for Hodge, appellee.

Before CIRILLO, President Judge Emeritus, and SAYLOR and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

Odessa Corbitt McGill, administratrix of the estate of David Carroll, appeals from an order entered in the Court of Common Pleas of Philadelphia County. We affirm.

This case involves a dispute over the distribution of settlement proceeds in a wrongful death matter. Appellee Brenda Hodge (Mother) and David Carroll (Father) were the parents of Tanisha Carroll, who died when she was five days old. Mother and Father lived together but were not married. In addition to Tanisha, Mother and Father had two other children together, a son and a daughter. Father also had two daughters with two other women who were half sisters to Mother and Father's children, and half sisters to each other. Mother, as administratrix of daughter Tanisha's estate and in her own right, brought a medical malpractice case alleging negligence against several doctors and a hospital. The law suit included a wrongful death claim and a survival action. After the malpractice suit was filed, but three years before it

went to trial, Father died intestate. The case was tried before a jury, and a one million dollar verdict was entered on December 9, 1995. The doctors/hospital appealed and subsequently agreed to settle the case for $1.1 million.

A petition to settle wrongful death and survival actions was filed by Mother, requesting that the trial court approve the distribution of the settlement proceeds. The proposed distribution of the wrongful death proceeds made no provision for Father's estate, and instead provided that the money be distributed to Mother. Appellant Odessa Corbitt McGill, administratrix of Father's estate, filed a response to the petition to settle wrongful death and survival action. In her response, interested party McGill asked the trial court to approve the settlement but to distribute 50 percent of the settlement funds allocated to the wrongful death claim to the beneficiaries of Father's estate. By order dated February 21, 1996, the Honorable Joseph D. O'Keefe approved the amount of the settlement but allocated the entire wrongful death proceeds (after payment of counsel fees and costs) to Mother. This appeal followed.

The following issues have been raised for our consideration:

(1) Where the father of the infant decedent has a statutory right to one-half the proceeds of a wrongful death action, which right vested as the time of the infant's death, did the trial court err in refusing to distribute one-half of the proceed to the father's estate because the father died during the litigation before the settlement was reached?

(2) Where a five-day-old infant dies and both father and mother are alive at the time of death, is the father's estate divested of his pecuniary loss because the father died during the litigation before the settlement was reached?

At common law, there existed no right of action to recover damages for the wrongful death of a relative in this Commonwealth; rather, such a right of action has been made possible by statute. *Frazier v. Oil Chemical Co.*, 407 Pa. 78, 179 A.2d

202 (1962).[1]  Various legislative enactments have resulted in Pennsylvania's current Wrongful Death Act, the provisions of which are set forth as follows:

(a) **General rule.**—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid duplicate recovery.

(b) **Beneficiaries.—Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere.**  The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

(c) **Special damages.**—In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

(d) **Action by personal representative.**—If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical,

1.  "The British and American belief that a common law right of action did not exist for wrongful death received its greatest impetus and support from the oft-quoted pronouncement of Lord Ellenborough that 'in a civil court the death of a human being could not be complained of as an injury.'"  Lloyd Cohen, *Toward an Economic Theory of the Measurement of Damages in a Wrongful Death Action*, 34 Emory L.J. 295, 297 (1985).  Lord Ellenborough's rule was taken as an authoritative statement and, in response, the British Parliament passed the first wrongful death act.  *Id.* at 297–98.

funeral expenses and expenses of administration necessitated by reason of injuries causing death.

42 Pa.C.S.A. § 8301 (emphasis added).

■■■■ "The purpose of the Wrongful Death Act is 'to compensate certain enumerated relatives of the deceased for the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived.'" *Berry v. Titus,* 346 Pa.Super. 376, 381, 499 A.2d 661, 664 (1985) (quoting *Manning v. Capelli,* 270 Pa.Super. 207, 211, 411 A.2d 252, 254 (1979)). *See Linebaugh v. Lehr,* 351 Pa.Super. 135, 505 A.2d 303 (1986) (purpose of the wrongful death statute is to compensate the decedent's survivors for their pecuniary losses; it does not compensate the decedent's estate). "[O]nly those persons who stand in a family relation to the deceased are statutorily authorized to recover damages." *Berry,* 346 Pa.Super. at 381, 499 A.2d at 664 (quoting *Manning,* 270 Pa.Super. at 210, 411 A.2d at 254). A family relation is defined to require a showing of pecuniary loss by the relatives seeking damages as a result of the wrongful death of the decedent; there must be a pecuniary loss by one in a family relation before there is any recovery in damages. *Berry, supra; Manning, supra.* Succinctly stated:

> [a]n action for wrongful death may be brought by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death. 42 Pa.C.S. § 8301(d); Pa.R.Civ.P. 2202(a). The damages recovered are not part of decedent's estate, but rather are compensation to individual members of the family for their loss. It is an action unknown to the common law.

*Tulewicz v. S.E. Pa. Trans. Auth.,* 529 Pa. 588, 596, 606 A.2d 427, 431 (1992); *see McFadden v. May,* 325 Pa. 145, 189 A. 483 (1937). As set forth above, the wrongful death statute provides that the right of action exists **"only for the benefit of the spouse, children or parents of the deceased...."** 42 Pa.C.S.A. § 8301(b) (emphasis added).

Under the plain language of the Wrongful Death Act, Father is clearly one of the beneficiaries authorized to recover damages. The statute is silent, however, on the question of whether, upon the death of a beneficiary (Father) subsequent to the death for whom the action lies (daughter), the right of action and damages awarded therefrom survives to the deceased beneficiary's estate. By and large, it has been the function of the courts to determine whether the action abates, survives for the benefit of the deceased beneficiary's estate, or survives for the benefit of surviving statutory beneficiaries. *See* 13 A.L.R.4th 1060, 1064 § 2[a]. Courts are also faced with the question of what effect a beneficiary's death will have on the damages payable or recoverable in a wrongful death action, assuming that death does not abate the action entirely. *See* 73 A.L.R.4th 441, 444–45 § 1[a].

Here, the trial court strictly construed section 8301(b), and concluded that the beneficiaries of Father's estate (*i.e.*, Father's other children) were not beneficiaries under the wrongful death statute, did not suffer pecuniary loss from the death of the infant daughter (their half-sister), and, therefore, were not entitled to proceeds from the wrongful death distribution. The court's reasoning was simple: Father's heirs fell outside the scope of the defined beneficiaries under the statute and, therefore, were precluded from recovery.

Father's administratrix argues that the trial court ignored an early line of Pennsylvania cases. Those cases provide, according to Father's administratrix, that beneficiaries' rights of action and recovery for the wrongful death of a decedent is determined at the time of death of the decedent, and that such recovery is properly passed on to an entitled beneficiary's estate if he or she dies before trial. Specifically, Father relies primarily upon three wrongful death cases decided in the early 1900s. The most recent of the three cases, *McArdle v. Pittsburg Railways Co.*, 41 Pa.Super. 162 (1909), is one on which Father places great emphasis. There, Michael McArdle brought an action to recover damages for the death of his wife. McArdle died before trial and the administrator of his estate was substituted as the plaintiff. The McArdles left five sons

behind. The court was specifically asked to rule on whether the measure of damages would be affected by Michael McArdle's death. *Id.* at 165. The court noted that the main object of the wrongful death statute is to remedy the loss to the family, *id.* at 166, and that the jury must estimate the value of the life to the surviving members of the family and render a verdict for a lump sum, which would pass to family members in the proportion they would take in the case of intestacy. *Id.* at 169. "To hold that this lump sum shall be less, if the husband who brought the action dies pending the litigation, and after recovery of the same shall be apportioned as directed by the act, would not accomplish the result, so far as the children are concerned, which the act plainly intends." *Id.* Ultimately, the court concluded that:

[A]t the time of suit . . . the loss of Michael McArdle and his family was complete, and they then had a present right to full compensation therefor, to be measured without regard to his age or expectancy of life[;] it would be illogical to hold that the happening of his death before the suit was brought to trial affected the right. We are of the opinion that this would not only be illogical but would be contrary to the true intent and meaning of our statutes as heretofore construed.

*Id.* at 170. In concluding as such, the court reversed the trial court's judgment based upon an instruction that the father's damages must be determined only as to the time between his wife's death and his own death. *Id.* at 169. The upshot of the court's decision, therefore, was that the right of action and recovery for the wrongful death action vested for the father and his children at the time of wife's/mother's death.

In reaching its decision, the *McArdle* court cited *Fitzgerald v. Edison Elec. Illuminating Co.*, 207 Pa. 118, 56 A. 350 (1903), another case upon which Father relies. In *Fitzgerald*, a widow brought an action for damages for the death of her husband on her behalf and that of her child. While the law suit was pending, the widow died. The court was asked to determine whether it was proper for the widow's administrator to be substituted for the widow for purposes of maintain-

ing the action on her behalf. In deciding that such action was proper, the court stated:

As to the form of action, this suit was properly brought by the widow in her own behalf and that of her son, they being the only parties entitled to recover. If the widow had lived until the suit was concluded, the sum recovered would have been divided between her and the child, as in case of the death intestate of the husband and father. If she had lived until after the judgment was obtained, but had died before it was paid, certainly her administrator would have been entitled to take the share coming to her. As she died during the pendency of the litigation, we can see no good reason why her administrator was not properly substituted to maintain the action in her behalf.

*Id.* at 122, 56 A. at 352. In conclusion, the court enunciated:

The question as to who should be substituted as plaintiff upon the death of the widow ... is of no practical importance. The interest of the child in the proceeds remains and can only properly be paid to its guardian.... [I]n any event, the proportions in which the sum recovered is to be shared between the child and the estate of the mother is a matter for future consideration....

*Id.* at 122–23, 56 A. at 352. Additionally, the court made mention of the fact that while it was proper to substitute the widow's administrator, it would be in error to restrict the assessment of damages to the time of the widow's death, as the suit was brought by the widow for the use of herself and her child. *Id.* at 120, 56 A. 350.

Finally, Father places much reliance on *Haggerty v. Borough of Pittston,* 17 Pa.Super. 151 (1901). There, Anthony Haggerty brought an action to recover damages for the death of his minor daughter; he was the only surviving parent and she left no husband or children. *Id.* at 152. After the action was filed, but before it was brought to trial, Haggerty died. The sole issue presented to this court was whether Haggerty's personal representatives could be substituted to prosecute the suit. The court held that the personal representative could be substituted as the plaintiff and prosecute the suit to final

judgment, and that the action did not abate upon Haggerty's death. *Id.* at 153–54.

■ While these decisions are instructive, they provide only persuasive authority with regard to the instant set of circumstances; in none of these timeworn cases was a court asked to consider the issue now before us. Additionally, each of these cases is factually distinguishable from the case at hand. It is true that in *McArdle,* support is found for Father's contention that the right to compensation or recovery vests at the time of the wrongful death, and is not affected by the subsequent death of the entitled beneficiary who brings suit. We do not dispute that such a right is determined at the time the wrongful death occurs. *See Haddigan v. Harkins,* 441 F.2d 844 (3d Cir.1970) (in Pennsylvania the rights of survivors in a wrongful death case are fixed at the moment of death; remarriage cannot be considered in the assessment of damages). In the instant case, however, we are less concerned with at what point the entitled beneficiaries' rights vest, and more concerned with who should ultimately receive the compensation within the confines of the wrongful death statute.

The rationale and holdings in both *McArdle* and *Fitzgerald* must be viewed in light of the fact that, in both cases, the ultimate prospective recipients of the damages awarded in the wrongful death cases were **named beneficiaries** under the wrongful death statute. In *McArdle,* the five sons were in line to receive the lump sum portion of the proceeds from their mother's wrongful death action, notwithstanding their father's death pending the wrongful death suit. The court's reasoning in *McArdle* was clearly affected by the existence of the sons, named beneficiaries under the wrongful death statute. Indeed, the court stated that to lessen the lump sum due to the father's death would not be proper, "so far as the children are concerned, which the act plainly intends." *McArdle,* 41 Pa.Super. at 169.[2] Likewise, in *Fitzgerald,* the court recognized

2. The rationale in *McArdle* stops short of answering the question with which we are faced today. One commentator has interpreted its holding as follows: "The court thus has indicated that ... the husband's share of the total lump-sum recovery should pass through his

that, after the mother died pending the father's wrongful death suit, "[t]he interest of the child in the proceeds remain[ed.]" *Fitzgerald*, 207 Pa. at 123, 56 A. at 352. The court did not specifically hold that the mother's share of the wrongful death suit passed through her estate to her child, but, even if it had, the child was a named beneficiary entitled to be compensated under the wrongful death statute.[3] The remaining case, *Haggerty*, simply stands for the proposition that where a properly named beneficiary brings suit in a wrongful death action and dies before trial, it is appropriate to substitute the deceased beneficiary's administrator as a party. Read within its four corners, this case stands for nothing more and nothing less.

█ It appears from the limited case law on this subject that a wrongful death cause of action does not abate upon a beneficiary's death pending suit. None of the relevant cases, however, have discussed the distribution of sums recovered where a deceased beneficiary's estate seeks to collect proceeds under the wrongful death statute, and the beneficiaries of the estate are not enumerated beneficiaries under the statute. We have determined that a beneficiary's right to recover vests at the time of the subject decedent's wrongful death. After much consideration, we find that when a beneficiary dies after a wrongful death action is filed, such vested right to recovery must be reexamined where the beneficiary's heirs do not fall within the enumerated beneficiaries under the Wrongful Death Act. In order to uphold the intent of Pennsylvania's

estate in an unaltered quantum to his heirs and distributees, who in the case at bar also constituted the remaining members of his class in the wrongful death action." 73 A.L.R.4th 441, 477 § 11[b]. While such a result may be inferred from the court's decision in *McArdle*, this inference goes beyond the scope of the court's holding. In any event, the commentator points to the major difference between *McArdle* and the case at bar, namely, that in *McArdle*, the father's heirs were members of the class of beneficiaries in the wrongful death action.

3. Besides its findings regarding a negligence issue, the *Fitzgerald* court's holding was limited to finding that the mother's administrator may properly be substituted as plaintiff. Also, as cited previously, the court left "for future consideration" the proportion in which the damages recovered would be shared. *Fitzgerald*, 207 Pa. at 122–23, 56 A. at 351–52.

Wrongful Death Act, and to ensure that the Act's objective will not be thwarted, we must make certain that the ultimate recipients of wrongful death proceeds are distributed to those whom the legislature envisioned.

■ We are required to give strict construction to all legislative acts adopted prior to May 28, 1937, which are in derogation of the common law. *Jenkins v. Jenkins,* 246 Pa.Super. 455, 461–63, 371 A.2d 925, 929 (1977); *see* 1 Pa. C.S.A. § 1928.[4] As we have noted in *Manning, supra,* the wrongful death act created a right of action unknown to the common law. We shall construe it narrowly. *See Thompson v. Delaware, Lackawanna & Western R.R. Co.,* 41 Pa.Super. 617 (1910) (stating that a statute giving a right to the personal representative or next of kin of a deceased to recover for the tortious acts of others is in derogation of common law and should be strictly construed). The Act itself specifically states that the only persons entitled to benefit from a wrongful death action are the spouse, children, or parents of the deceased. 42 Pa.C.S.A. § 8301(b). As a parent of the deceased, Father was clearly entitled to benefit from his daughter's wrongful death action; however, neither the plain language of the statute nor Pennsylvania case law allows Father's estate (his intestate heirs) to be compensated for the death of his daughter. The purpose of the wrongful death statute is to compensate "the **decedent's survivors** for the pecuniary losses they have sustained as a result of the decedent's death." *Slaseman v. Myers,* 309 Pa.Super. 537, 545, 455 A.2d 1213, 1218 (1983) (emphasis added); *see Linebaugh, supra.* Again, had Father survived (and proved pecuniary loss), he certainly would have been able to recover for his loss. Those benefiting from Father's estate, however, have not sustained a loss according to the statute and, therefore, for clear policy reasons, should not receive the benefits through Father's estate. The legislature has given the citizens of this Commonwealth an opportu-

4. The current wrongful death statute is substantially a reenactment of the acts of April 15, 1851 (P.L. 669), § 19 (12 P.S. § 1601), act of April 26, 1855 (P.L. 309), § 1 (12 P.S. § 1602) and act of May 13, 1927 (P.L. 992) (No. 480), § 1 (12 P.S. § 1604).

nity to recover from losses sustained by a family member's death which, at common law, was not available. In carving out such a statute, however, lawmakers made it quite clear that only a limited class of persons was eligible to benefit from such losses. We will not expand such a group by allowing these benefits to pass through an intended beneficiary's estate to those with neither the family relation nor pecuniary loss necessary under the Act. While the case law permits a deceased beneficiary to participate in a cause of action for wrongful death,[5] we must draw the line at distributing proceeds to those not entitled under the Act; our first obligation is to remain faithful to the specific language in the statute.

This court's decision in *Manning v. Capelli, supra*, while not on point, is instructive for purposes of interpreting the Wrongful Death Act so as to prevent inequitable benefits to those not intended to profit from the statute. In *Manning*, the court was asked whether an adult emancipated child of the deceased was entitled to share in the distribution of damages where the deceased also left surviving minor dependent children. *Manning*, 270 Pa.Super. at 209, 411 A.2d at 253–54. In the interest of fairness, this court concluded as follows:

> It is settled beyond dispute that only persons standing in a "family relation" with the deceased, hereinbefore defined to require pecuniary loss, and statutorily authorized to maintain a wrongful death action as a result of the deceased's death. . . . Where, as in the case before us, the persons seeking to share in the distribution are admittedly without standing, for want of pecuniary loss, to initiate a death action in regard to the deceased parent, it would frustrate the statutory purpose of compensating the very real damages suffered by the deceased's minor, dependent children to hold that an adult, emancipated child is entitled to a per capita share of the death proceeds solely because under the intestacy laws emancipated children may inherit intestate property of a deceased parent. **The right to recover**

5. As dictated by the cases cited herein, although a deceased beneficiary's cause of action survives, the **practical** reality of the instant scenario defeats bringing such a cause of action.

**damages should not be more extensive than the right to bring the initial action.** The intestate scheme for distributing proceeds is necessarily limited by the parameters of the right of action created by the Wrongful Death Statute.

*Id.* at 213, 411 A.2d at 255-56 (emphasis added). In support of its holding, the *Manning* court relied upon *Lewis v. Hunlock's Creek and M. Turnpike Co.,* 203 Pa. 511, 53 A. 349 (1902), where it was stated: "The Act first gives the right of action, and then prescribes the mode of distribution of the sum recovered, but that necessarily means distribution among those entitled to sue. It would be absurd to suppose that in the same sentence the statute meant to give part of the damages to those to whom it had denied the right of action." *Id.* at 513, 53 A. at 350.

It follows that Father's children, who were not permitted to a right of action under the Wrongful Death Act, are likewise not entitled to wrongful death proceeds for the death of Tanisha Hodge. Again, the fact that Father's right of action does not abate is, under these circumstances, not a proper focus. For reasons previously discussed, we will not permit a rule allowing distribution of wrongful death proceeds to those not entitled under the Act. The trial court properly refused to distribute 50 percent of the wrongful death settlement funds to the beneficiaries of Father's estate; rather, Mother, a named beneficiary under the Act who suffered pecuniary loss, is the proper recipient of the proceeds.

Affirmed.