435 F.3d 136
 GROSSHANDELS-UND LAGEREI-BERUFSGENOSSENSCHAFT, Berufsgenossenschaft der Chemischen Industrie, Bundesversicherungsanstalt, für Angestellte, and Verwaltungsberufsgenossenschaft, Plaintiffs-Appellants,
v.
WORLD TRADE CENTER PROPERTIES, LLC, United Airlines, Inc., AMR Corp., American Airlines, Inc., also known as American Eagle, Globe Aviation Services, Inc., Huntleigh USA Corporation, Boeing Company, Argenbright Security Inc., Burns International Security Services Corp., Burns International Services Corp., Globe Airport Security Services, Inc., UAL Corporation, and ICTS International NV, Defendants-Appellees.
 No. 05-0182-CV(L).
 No. 05-0184-CV(CON).
 United States Court of Appeals, Second Circuit.
 Argued: November 9, 2005.
 Decided: January 11, 2006.
 
 Kenneth F. McCallion, McCallion & Associates, LLP, New York, NY, for Plaintiffs-Appellants.
 Charles E. Koob, Simpson Thacher & Bartlett LLP, New York, N.Y. (Joseph F. Wayland, of counsel), for Defendant-Appellee Argenbright Security, Inc.
 Richard A. Williamson, Flemming Zulack Williamson Zauderer LLP (Gerald G. Paul and Wolfgang A. Dase, of counsel), for Defendant-Appellee World Trade Center Properties LLC.
 Desmond T. Barry, Jr., Condon & Forsyth LLP, New York, N.Y. (Roger E. Podesta, Debevoise & Plimpton, New York, NY, of counsel), for Defendants-Appellees AMR Corp. and American Airlines, Inc.
 James P. Connors, Jones Hirsch Connors & Bull P.C., New York, N.Y. (Paul V. Kelly, Kelly, Libby & Hoopes, P.C., Boston, MA; Gary W. Westerberg, Lord, Bissell & Brook, Chicago, IL, of counsel), for Defendants-Appellees Globe Airport Security Services, Inc. and Globe Aviation Services Inc.
 Timothy Welch, Mendes & Mount LLP, New York, N.Y. (H. Lee Godfrey, Susman Godfrey, LLP, Houston, TX, of counsel), for Defendant-Appellee Huntleigh USA Corp.
 Michael R. Feagley, Mayer Brown, Rowe & Maw, Chicago, IL (Jeffrey J. Ellis, Quirk & Bakalor, P.C., New York, NY, of counsel), for Defendants-Appellees UAL Corporation and United Airlines, Inc.
 Jon Paul Robbins, McLaughlin & Stern LLP, New York, NY, for Defendant-Appellee ICTS International NV.
 Thomas J. McLaughlin, Perkins Coie LLP, Seattle, WA (Lee S. Richards III, Richards Spears Kibbe & Orbe LLP, New York, NY, of counsel), for Defendant-Appellant Boeing Company.
 Robert I. Goodman, Ryebrook, NY, for amici curiae Federal Republic of Germany and the German Federation of Institutions for Statutory Accident Insurance and Prevention, in support of Plaintiffs-Appellants.
 Before: CALABRESI, B.D. PARKER, and WESLEY, Circuit Judges.
 WESLEY, Circuit Judge.
 
 
 1
 This case presents an unusual question: whether plaintiffs, German Social Insurers ("GSIs"),[1] may bring state-law based negligence and wrongful death claims arising out of the terrorist attacks of September 11, 2001, ("9/11") under authority of German law despite the personal representatives' receipt of funds from the 9/11 Victim Compensation Fund ("VCF" or the "Fund"). The district court answered that question in the negative, and we affirm.
 
 
 2
 On 9/11, six individuals insured by the GSIs — Christian Adams, Klaus Bothe, Sebastian Gorki, Heinrich-Richard Kimmig, Wolfgang Peter Menzel, and Klaus Johannes Sprockamp — lost their lives as a result of the terrorist attacks. Some were passengers on the hijacked airplanes. Others were present at the World Trade Center ("WTC"). All but one of the decedents were killed at or near the WTC in New York. Adams died in Pennsylvania.[2] The personal representatives of each decedent submitted a claim to the VCF and received compensation from the Fund. The GSIs paid insurance benefits to the decedents' beneficiaries.
 
 
 3
 Subsequently, the GSIs brought suit against defendants for wrongful death and negligence for the amounts paid by the GSIs to decedents' beneficiaries. The GSIs premise their right to sue upon a provision of German law that they assert automatically transfers the claims of the insureds — here the decedents — to the relevant GSI upon the insured's injury: "A claim for compensation for a loss ... is transferred to the social insurance carrier... to the extent that the social insurance carrier ... has to pay social benefits as a result of the occurrence of loss." Sozialgesetzbuch (German Social Insurance Code), Aug. 18, 1980, Part X, § 116 Ansprüche gegen Schadenersatzpflichtige, ¶ 1 (hereinafter "SGB X, § 116, ¶ 1"). The GSIs expressly disclaim that the putative right to bring this action is based upon subrogation.
 
 
 4
 Given the automatic transfer, the GSIs claim that the waiver of the right to bring any civil action arising out of the 9/11 attacks by the decedents' personal representatives — a necessary precursor to the receipt of funds from the VCF — could not have affected their rights to bring this action, as the personal representatives essentially had nothing to waive. Alternatively, the GSIs claim that, insofar as VCF claimants may recover collateral source[3] obligations, collateral source providers should be able to maintain actions against tortfeasors for amounts paid. In relevant part, defendants assert that, even if any claims were transferred to the GSIs, the claims fail because the GSIs cannot maintain the negligence or wrongful death actions under New York or Pennsylvania law.
 
 
 5
 The Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, 115 Stat. 230 (Sept. 22, 2001), as amended by the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (Nov. 19, 2001) (together, the "Stabilization Act"), provides the starting point for our analysis. See generally Virgilio v. City of New York, 407 F.3d 105 (2d Cir.2005) (discussing statutory framework). Title IV of the Stabilization Act establishes the VCF and the rules governing claims related to the 9/11 attacks. Relevant here, section 408(b) creates an exclusive federal cause of action "for damages arising out of the hijacking[s]" and dictates that "[t]he substantive law for decision in any such [action] shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." 115 Stat. at 240-41. Thus, New York and Pennsylvania law provide the rules to be applied.
 
 
 6
 Because there were two places of injury, we apply the choice-of-law rules of each of those states. New York's and Pennsylvania's tests require application of the wrongful death and survival statutes of those states. New York choice-of-law analysis for torts[4] depends upon whether the competing legal rules relate to conduct regulation or loss allocation. Given that wrongful death and survival actions relate to loss allocation, see Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985), and that the parties are domiciled in a number of different states, the presumption is that New York's rules apply, see Neumeier v. Kuehner, 31 N.Y.2d 121, 128-29, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972); the GSIs have not persuaded us otherwise.
 
 
 7
 Pennsylvania choice-of-law analysis for torts incorporates government-interest analysis and the "significant relationship" theory. See Cipolla v. Shaposka, 439 Pa. 563, 267 A.2d 854, 855-57 (1970); Leonard v. Reed 62 Pa. D. & C.4th 166, 172 (Pa.Com.Pl.2003); see also Restatement (Second) of Conflict of Laws § 145 (1971). In applying that qualitative test, we look to the following:
 
 
 8
 (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered.
 
 
 9
 Leonard, 62 Pa. D. & C.4th at 172. The third and fourth factors are not particularly useful in this case. Defendants have several different principal places of business, and plaintiffs conduct their business predominantly in Germany and the European Union. We doubt there is a place where the relationship between the parties is centered. The second factor implicates New Jersey because the alleged omissions and errors giving rise to the insurer's indirect injury would likely have taken place at Newark Airport, the place of departure for decedent Adams' plane. But none of the parties has suggested that New Jersey law applies.[5] Finally, the first factor favors application of Pennsylvania law because Adams' injury obviously occurred in Pennsylvania.
 
 
 10
 Despite the interest that the GSIs have in compensating beneficiaries and, to a lesser extent, in reimbursement for that compensation, the additional consideration of consistency leads to the application of Pennsylvania law. Everyone aboard United Airlines Flight 93 perished. Although the victims' beneficiaries have received compensation from the VCF, the GSIs press their claims. Given the possible combinations of potential litigation flowing from that crash, it makes sense to apply one set of law to the claims involved. Accordingly, deference to uniformity weighs in favor of Pennsylvania law as opposed to German law. See Restatement (Second) of Conflict of Laws § 6.
 
 
 11
 Turning to the wrongful death claims, we find that the GSIs have no recourse against defendants. Even if New York or Pennsylvania courts would recognize a transfer of claim from the decedents to the GSIs pursuant to German law, the decedents had no wrongful death claim to transfer. At common law, a beneficiary had no right of action against tortfeasors for the pecuniary loss caused by the death of the decedent. See, e.g., Hernandez v. New York City Health & Hosps. Corp., 78 N.Y.2d 687, 692-93, 578 N.Y.S.2d 510, 585 N.E.2d 822 (1991); Hodge v. Loveland, 456 Pa.Super. 188, 690 A.2d 243, 245 & n. 1 (1997). Nonetheless, New York and Pennsylvania both provide certain individuals with the right to recover for pecuniary loss caused by the wrongful acts of third parties. See N.Y. EST. POWERS & TRUSTS LAW § 5-4.1; PA. R. CIV. P. 2202(a)-(b); 42 PA. CONS. STAT. § 8301(b). These statutes, and case law interpreting them, provide that the cause of action is prosecuted by the estate's personal representative for the benefit of legislatively designated individuals: in New York, only distributees — those who would share in the estate if the decedent had died intestate — have a right to the proceeds from a wrongful death action, see, e.g., Hernandez, 78 N.Y.2d at 692, 578 N.Y.S.2d 510, 585 N.E.2d 822; in Pennsylvania, only the spouse, children, and parents of the deceased have an interest in the action, see, e.g., Kiser v. Schulte, 538 Pa. 219, 648 A.2d 1, 4 (1994). Decedents had no interest in a wrongful death claim. Wrongful death actions are for the benefit of those who would have enjoyed the care and support of the decedent but for the decedent's untimely and unfortunate death. The GSIs had no right to recover wrongful death damages.
 
 
 12
 Similarly, we find that the GSIs may not maintain their claim for negligence, which is nothing more than a survival action, given that they are not personal representatives and do not have the putative powers possessed by those carrying letters testamentary to prosecute such actions.[6] See N.Y. EST. POWERS & TRUSTS LAW § 11-3.2; 20 PA. CONS. STAT. §§ 3372-73; Gee v. CBS, Inc., 471 F.Supp. 600, 615-16 (E.D.Pa.1979) (interpreting Pennsylvania law). "A personal representative who has received letters of administration of the estate of a decedent is the only party who is authorized to bring a survival action for personal injuries sustained by the decedent ... on account of his or her death." Mingone v. State, 100 A.D.2d 897, 899, 474 N.Y.S.2d 557 (1984) (dismissing action without prejudice where no administrator had been duly appointed); accord Kiser, 648 A.2d at 4 ("A survival action ... is brought by the administrator of the decedent's estate in order to recover the loss to the estate ... resulting from the tort.").[7] Notwithstanding plaintiffs' assertion of a "direct" cause of action, their negligence claims are premised upon survival claims they cannot assert. Accordingly, dismissal of the negligence action was appropriate.
 
 
 13
 Plaintiffs' alternative collateral source argument is also without merit. While it is clear that Fund claimants do not waive the right to sue collateral source obligors, like the GSIs, see Stabilization Act § 405(c)(3)(B)(i), 115 Stat. at 239-40; Virgilio, 407 F.3d at 109, the claim that collateral source obligors therefore have the right to sue third-party tortfeasors does not follow. The statutory scheme of the VCF indicates that the limited waiver provision merely took account of the fact that Fund claimants had recoveries reduced by the amount of collateral-source reimbursements to which they were entitled. Since VCF awards were reduced by the amount of the collateral sources, claimants could still seek recovery for those funds from obligors. Stabilization Act §§ 405(b)(6), (c)(3)(B)(i), 115 Stat. at 239-40. The VCF thus stands as a source of compensation for victims and their families that chose to file claims while providing finality of liability exposure to a wide array of potential litigation targets. This federal foresight did not mystically grant collateral source providers an end-run around the barriers of state-based policy decisions.
 
 Conclusion
 
 14
 The district court's order entered December 16, 2004, dismissing the action is hereby AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 German Social Insurers are government-backed entities that underwrite risks to employees of German companies in order to spread those risks among the general working population. Employers pay the premiums, and the GSIs pay claims upon injury to a given employee. Thus, unlike private life-insurance providers common to the American insurance landscape, GSIs are not profit motivated, and the insured employees are covered for broad categories of injuries, including but not limited to death
 
 
 [2]
 Adams was aboard United Airlines Flight 93 from Newark to San Francisco, which crashed in a field in rural Pennsylvania after being hijacked
 
 
 [3]
 Section 402(4) of the Air Transportation System & Stabilization Act defines "collateral source" to mean "all collateral sources [of compensation], including life insurance, pension funds, death benefit programs, and payments by Federal, State, or local governments related to the terrorist-related aircraft crashes of September 11, 2001." Pub.L. No. 107-42, 115 Stat. 230, 237 (Sept. 22, 2001)
 
 
 [4]
 We reject plaintiffs' contention that contract choice-of-law analysis applies, as the essence of their claim is one of tort. Accordingly, we rely on tort choice-of-law rules
 
 
 [5]
 This comes as no surprise; New Jersey law tracks the law of Pennsylvania on all relevant pointsSee N.J. Stat. Ann. §§ 2A:15-3, :31-2, :31-4 (2005).
 
 
 [6]
 Defendants, noting that the GSIs have foresworn subrogation claims, argue that the survival claims must be dismissed because defendants owed no duty to the GSIs. Given our analysis, we need not reach that argument
 
 
 [7]
 CitingBodner v. Banque Paribas, 114 F.Supp.2d 117 (E.D.N.Y.2000), plaintiffs contend that they may sue even though they are not the personal representatives of the deceased. That case, however, is distinguishable. There, the intestate distributees asserted a federal cause of action. See id. at 126. As to those decedents that passed away in concentration camps in Europe, the district court relied on French succession law without undertaking a conflict-of-law analysis. The court found that the statutory distributees whose parents had died in New York State did not lack standing to sue under the Alien Tort Claims Act, pursuant to federal question jurisdiction, as they had a vested interest in the decedents' net estate upon their death. Id. at 121, 126-27.