Justice CASTILLE joins this concurring opinion.

**In the Matter of the ESTATE OF Laird M. WOLFE, Deceased,**

**Appeal of Eva J. Allen, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 2006.

Filed Dec. 6, 2006.

Reargument Denied Feb. 15, 2007.

Louis C. Alvin, Pittsburgh, for appellant.

David M. Gulnac, Clarion, for appellee.

BEFORE: BOWES, PANELLA and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 Eva Allen appeals the order denying her the right to recover her intestate portion of the proceeds of her father's wrongful death action. We reverse, remand, and direct that Appellant be awarded her intestate share of the proceeds of the wrongful death action.

¶ 2 On April 7, 2004, Laird M. Wolfe, the decedent, died intestate as a result of a traffic accident. He was survived by Appellant, his adult daughter from a previous marriage, and his second wife, Linda A. Wolfe, the Appellee in this matter. Appellee was granted letters of administration, and the attorney for the estate negotiated a settlement for underinsured motorist coverage in the amount of $600,000, which represented wrongful death and survival recovery. Those proceeds, with the participation of Appellant's previous attorney, were allocated $180,000 to the survival action and $420,000 as settlement of the wrongful death action. Appellee then petitioned to have the entire proceeds of the wrongful death action distributed to her, and Appellant countered with a petition seeking distribution of the wrongful death proceeds in accordance with the intestate laws of Pennsylvania. Following a hearing on March 15, 2005, the orphans' court concluded that Appellant had not suffered a pecuniary loss under 42 Pa.C.S. § 8301 and could recover none of the proceeds of

the wrongful death action.[1] This timely appeal followed.

■ ¶ 3 The issue presented is whether Appellant established that she suffered pecuniary loss from the death of her father and therefore has the right to share in the proceeds of the wrongful death action as intestate heir.[2] Our standard of review in this context is settled.

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

*In re Estate of Cherwinski,* 856 A.2d 165, 167 (Pa.Super.2004) (quoting *In re Estate of Schultheis,* 747 A.2d 918, 922 (Pa.Super.2000)).

■ ¶ 4 We begin our discussion with an examination of the seminal decision in this area, *Gaydos v. Domabyl,* 301 Pa. 523, 152 A. 549 (1930). Therein, a widow was negligently killed, and the intestate heirs entitled to share in the proceeds of her wrongful death action included one emancipated adult child who did not live at home, one emancipated adult child who was incapaci-

---

1. That section states that (emphasis added):

(a) GENERAL RULE.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

(b) BENEFICIARIES.—Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. **The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy** and without liability to creditors of the deceased person under the statutes of this Commonwealth.

2. Appellant also raised two additional issues in her brief: 1) under section 8301, she was not required to demonstrate that she suffered pecuniary loss in order to share in the proceeds of the wrongful death action; and 2) since Appellee breached her fiduciary duty to the estate when she allocated so much of the insurance proceeds to the wrongful death action and so little of the proceeds to the survival action, Appellant was not required to demonstrate that she suffered pecuniary loss in order to share in the proceeds of the wrongful death action. At oral argument, Appellant acknowledged that the current law requires a showing of pecuniary loss under section 8301(a) in order to establish the right to share in the proceeds of the wrongful death action as an intestate heir under section 8301(b). She has included that argument in her brief to this Court to preserve it for review, and we will not discuss it further. At oral argument, Appellant also conceded that she has waived the argument that Appellee's breach of her fiduciary duty absolved Appellant from establishing that she suffered pecuniary loss. Hence, our review in this appeal is limited to addressing whether Appellant demonstrated that she did suffer pecuniary loss due to her father's death.

tated and lived in a state institution, three adult children who lived at home with the widow, and two minor children who lived at home. The issue presented was whether any or all of the children were entitled to share in the proceeds of the wrongful death action. The Court held that a person can recover a portion of the wrongful death proceeds if they are a child or spouse of the deceased and if they stand in a family relation to the deceased. Once a person qualifies as standing in a family relation to the decedent, the person shares in the wrongful death proceeds in accordance with his intestate share.

¶ 5 The *Gaydos* Court continued that a family relation "exists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts." *Id.* at 529, 152 A. at 551. The Court expressly stated that "those affected by such death need not reside at the same home or under the same roof as the deceased. They may reside elsewhere and still be within the family relation." *Id.* Nevertheless, the Court made it clear that before recovery will be permitted by one in a family relation, that person must suffer a pecuniary loss, which is defined as follows:

> Pecuniary loss has been defined to be a destruction of a reasonable expectation of pecuniary advantage from the deceased. It is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased[.]

> The reasonable expectation of pecuniary advantage to one standing in the family relation may be shown in many ways, but more frequently through ser-

vices, food, clothing, education, entertainment, **and gifts bestowed; to be reasonable, the services and gifts must have been rendered with a frequency that begets an anticipation of their continuance; occasional gifts and services are not sufficient on which to ground a pecuniary loss[.]**

*Id.* at 530, 152 A. at 552 (citations omitted; emphasis added). The Court further ruled, "An adult, if damaged, may recover as well as a minor" and that while a minor child is presumed to suffer pecuniary loss, an adult child must provide evidence of a pecuniary loss. *Id.* at 532, 152 A. at 553. The Court explicitly rejected the contention that once a child reaches the age of twenty-one, he or she cannot share in the wrongful death proceeds.

¶ 6 Clear pronouncements that guide our decision in this matter can be distilled from the holding of *Gaydos:* 1) an adult child suffering pecuniary loss from the death of a parent can recover his or her intestate portion of the proceeds of the wrongful death action; 2) the adult child is not required to live at home to recover those proceeds; and 3) pecuniary loss can be established by the existence of gifts and services from the decedent to the adult child if those gifts or services are rendered with sufficient frequency that it is reasonably certain that they would have continued had the parent not died.[3]

¶ 7 Pursuant to the holding in *Gaydos,* we have held that an adult child who had no personal relationship with the decedent, had never received support from the decedent, and had never been given any gifts by the decedent failed to suffer a pecuniary loss and could not share in the proceeds of the wrongful death action. *Man-*

---

**3.** Appellee's implication that an emancipated adult child cannot recover a share of the wrongful death proceeds must, according to

the express dictates of *Gaydos,* be rejected. *Accord Short v. Pavlides,* 1999 WL 33932135 (Pa.Com.Pl.1999).

*ning v. Capelli,* 270 Pa.Super. 207, 411 A.2d 252 (1979); *see also Hodge v. Loveland,* 456 Pa.Super. 188, 690 A.2d 243 (1997) (where half-siblings had suffered no pecuniary loss, they could recover no portion of wrongful death proceeds resulting from death of infant child; proceeds awarded to child's mother); *accord Armstrong v. Berk,* 96 F.Supp. 182 (E.D.Pa. 1951) (children who lived apart from parent and received no support from parent did not establish pecuniary loss).

¶ 8 Conversely, where it is demonstrated that the person standing in a family relation with the decedent enjoyed his company and companionship and had a reasonable expectation of future pecuniary gain from the decedent, that person is entitled to recover in the wrongful death proceeds. Therefore, in *Berry v. Titus,* 346 Pa.Super. 376, 499 A.2d 661 (1985), we reversed an order of the orphans' court refusing to award the decedent's mother any proceeds of a wrongful death action where the child was fourteen years old when killed and continued to enjoy a familial relationship with his mother prior to his death even though he did not reside with her.

¶ 9 We now examine the evidence adduced at the hearing in this matter. The decedent participated in the state employee retirement system, and Appellant was the beneficiary of this pension and another retirement account. Appellant established that the pension benefit that she received was significantly reduced by her father's premature death at the age of fifty-four. In addition, Appellant proved that she enjoyed an extremely close relationship with her father and that he continually visited her and constantly gave her gifts.

¶ 10 The decedent divorced Appellant's mother when Appellant was six years old, but he saw Appellant every weekend following the divorce. After Appellant graduated from high school, she attended the same college as her father, who assisted her with tuition, meals, and housing. Mr. Wolfe also paid for Appellant's automobile and car insurance following her legal emancipation. N.T. Hearing, 3/14/05, at 16. After Appellant graduated from college, she continued to maintain a loving and cordial relationship with her father, speaking with him every "few days" and visiting him at least "once a month." *Id.* at 18. In 1996, Appellant moved closer to her father, and he visited her more often. When she began graduate school, Mr. Wolfe gave her the use of a car as well as one to two hundred dollars per month in spending money and groceries.

¶ 11 After Appellant finished graduate school, Mr. Wolfe visited Appellant "twice a month" and telephoned her five times per week. *Id.* at 21. Upon the birth of Appellant's son, the decedent called at least once every day and visited more often, constantly spending time with his grandson. *Id.* at 22. Mr. Wolfe helped Appellant remodel her kitchen when she was pregnant and planned to pay for his grandson's college education.[4]

¶ 12 When Mr. Wolfe visited, he "always brought something." *Id.* at 27. He either gave Appellant money or items. Appellant offered numerous examples. Mr. Wolfe bought her a digital camera, a television, furniture for the living room, and nearly all of the items that she needed for the baby. Appellant stated that there was not a single room in her home that "my dad hasn't somehow given to us." *Id.* at 28. In addition, her father "always" took Ap-

---

4. An independent witness established that Mr. Wolfe planned to postpone his retirement so he could pay for his grandson's college education. *Id.* at 42.

pellant and her family to dinner. *Id.* On cross-examination, Appellant reiterated that during his bi-monthly visits, Mr. Wolfe "would always ... give myself, my husband some money or take us out to dinner, provide us with something in some way." *Id.* at 32.

¶ 13 Appellee herself confirmed the frequency with which Mr. Wolfe visited Appellant, and Appellee also admitted that Mr. Wolfe maintained a separate checking account. Finally, Appellee admitted that Mr. Wolfe paid for vacations for Appellant until she was twenty-five years old and also paid for her wedding trip.

¶ 14 Although the orphans' court herein specifically credited Appellant's testimony about the gifts that had been given to her by the decedent, trial court opinion, 4/12/05, at 7, it concluded that they were not given with "frequency that begets an anticipation of their continuance." *Id.* This finding simply cannot be sustained based on the face of the present record. Appellee herself was vague and admitted that she had no knowledge of the gifts even while conceding that her husband visited Appellant at least twice a month. Appellant, whose testimony regarding gifts was credited, stated that during each visit, Mr. Wolfe brought something. Under no legal obligation, Mr. Wolfe assisted with his daughter's college expenses, helped her with her own car, offered her another car to use during graduate school, and bestowed upon her cash and groceries during graduate school. Even after she graduated from school and started a job, Mr. Wolfe gave Appellant cash and furniture and appliances and took her family out to dinner. He paid for vacations and her wedding trip. He helped Appellant remodel her home. He was going to pay for her son's education, and his pattern of past behavior confirms that he would have provided this benefit to Appellant. The provi-

sion of services, educational support, entertainment, personalty and food are all specifically delineated by our Supreme Court as establishing the existence of pecuniary loss.

¶ 15 The trial court also indicated that Appellant's gifts from her father could not establish pecuniary loss because there "was no promise that Mr. Wolfe would continue giving her money [and] other items," and that even if such promise was made, the promise would not have been of "an obligatory nature, and thus would not be enforceable and would not show a pecuniary loss." *Id.* This statement constitutes critical error as a misstatement of pertinent law. A promise of future gifts is never enforceable. Under *Gaydos,* gifts can establish the existence of pecuniary loss as long as they are given with sufficient consistency to establish that they would have continued.

¶ 16 The record in this case admits of no other conclusion but that Mr. Wolfe would have continued to make Appellant the object of his bounty. The sustained and generous nature of his gifts cannot be denied. Even though not legally obligated to do so, he paid college tuition and helped her pay for meals and off-campus housing. He paid for Appellant's vacations and wedding trip. He gave her furniture, cameras, a television, and nearly all of the items that Appellant needed for her baby. During his bi-monthly visits, he always gave Appellant something. He took her to dinner, brought her gifts, or gave her cash.

■■■■ ¶ 17 The dissent concludes that Appellant did not establish pecuniary loss because she was self-supporting and the gifts were not in the nature of support. However, a parent does not owe an adult child a duty of support. *Blue v. Blue,* 532 Pa. 521, 529, 616 A.2d 628, 633 (1992). Therefore, monetary transfers from a parent to an adult child could never be consid-

ered in the nature of support. The fact that the gifts in question were not in the nature of support cannot be grounds for denying the existence of pecuniary loss as such a result would be contrary to our Supreme Court's pronouncement in *Gaydos*, which instructs that an adult child can establish pecuniary loss through gifts if gifts are given with sufficient consistency that they would continue.

¶ 18 The dissent also would affirm the trial court on the basis that the decedent's gifts were "occasional in nature" and not given with "sufficient consistency as to create an anticipation of their continuance." Dissent at 1204. Mr. Wolfe visited his daughter twice a month and gave her something each time he visited. While Appellant was candid that the nature of the gifts changed on each occasion and sometimes consisted of cash and other times were food or furniture, the record simply cannot sustain a finding that the decedent, after years of always giving his daughter gifts twice monthly, would suddenly cease his generosity. The decedent's gifts simply were not of an occasional nature, offered only on birthdays and holidays. Furthermore, both Appellant and an independent witness established that the decedent intended to pay for his grandson's college education; this testimony directly refutes any position the gifts would not have continued.

¶ 19 Finally, the gifts in question were significant enough to establish pecuniary loss. The decedent did not merely give money to Appellant and take her and her family to dinner. He gave significant gifts in the form of furnishings for her home, well after she was self-supporting. Mr. Wolfe also was planning on paying for the college expenses of her child. College education is currently such a significant financial undertaking that the existence of a pecuniary loss to Appellant from her father's death simply cannot be disputed.

¶ 20 *Gaydos* provides that an adult child can share in the proceeds of a wrongful death action by establishing pecuniary loss. Appellant unquestionably established that fact. If Appellant cannot share in proceeds of her father's wrongful death action, no adult child could ever do so.

¶ 21 Order vacated. Case remanded for entry of an order awarding Appellant her intestate share of the $420,000 in wrongful death proceeds. Jurisdiction relinquished.

¶ 22 Judge POPOVICH files a Dissenting Opinion.

Dissenting Opinion by POPOVICH, J.:

¶ 1 I respectfully dissent from the majority's finding that Appellant had established a pecuniary loss and, therefore, was entitled to an intestate share of the proceeds of the wrongful death action.

¶ 2 The majority found that the trial court erred in determining that Appellant failed to establish that she suffered pecuniary loss in the death of her father and, therefore, had a right to share in the Wrongful Death proceeds.

¶ 3 I believe that the trial court was correct in determining that Appellant, like all beneficiaries, must demonstrate a pecuniary loss. *Cf.* 42 Pa.C.S.A. § 8301(a); *Gaydos v. Domabyl*, 301 Pa. 523, 152 A. 549 (1930); *Gillette v. Wurst*, 869 A.2d 488 (Pa.Super.2005). As Appellant was an adult child of the decedent, pecuniary loss is not assumed, as in the case of a minor child; therefore, she must prove direct pecuniary loss. *Gaydos*, at 532, 152 A. at 553.

¶ 4 An adult child can establish pecuniary loss by the existence of gifts and services from the decedent to the adult child if those gifts or services are rendered with sufficient frequency that it is reasonably certain that the gifts or services would have continued had the decedent not died.

*Gaydos,* at 530, 152 A. at 552. However, occasional gifts are not sufficient on which to ground pecuniary loss. *Id.,* at 530, 152 A. at 552.

¶ 5 The Orphans' Court credited Appellant's testimony about the gifts that her father had provided to her. Appellant stated that each time her father visited, which was at least twice a month, he brought something. Further, Appellant stated that her father had assisted with her collegiate education expenses, assisted in her purchase of an automobile during college, provided another vehicle for her to use during graduate school, and gave her cash and groceries while she was attending graduate school. *See N.T.,* 3/14/2005, at 17, 19. Appellant further testified that following graduate school, her father provided cash, furniture, and appliances. *See id.,* at 32. He also paid for her honeymoon vacation following her wedding. *See id.,* at 54. She also testified that he helped her remodel her family home and often took her family out to dinner. *See id.,* at 21, 26. Appellant testified that her father was going to pay for her son's education. *See id.,* at 23. The majority concluded that these gifts and services, *i.e.,* education, entertainment, and food, established Appellant's pecuniary loss. I disagree.

¶ 6 I believe that Appellant's testimony demonstrated that the decedent did not provide support for her. The decedent did not provide for any of the living expenses of Appellant and her family. *See* N.T., 3/14/2005, at 34–36. She was not dependent on her father at the time of his death. I believe that the more current gifts that the decedent did provide to Appellant were occasional in nature. Appellant's testimony was not specific as to the gifts that the decedent brought every time that he visited her to establish sufficient consistency as to create an anticipation of their continuance. She stated that on occasion, her father would give her or her husband sometimes fifty dollars and sometimes a hundred dollars in cash when he would visit or he would take them out to dinner. *See id.,* at 27. I believe that the cash or meals that the decedent provided to Appellant when he visited her were akin to occasional gifts and not anticipatory in nature, unlike a parent's payment of a monthly bill.

¶ 7 Further, I believe that Appellant's testimony demonstrated that, in the past, she was dependent on her father, and he provided her support. Appellant's testimony regarding the assistance during college and graduate school and regarding the support immediately following graduate school demonstrated that during that time in Appellant's life, she was supported by the decedent. However, as time progressed, Appellant became self-supporting in that she no longer relied on the decedent to provide for her support. Therefore, these past gifts were not relevant to Appellant's anticipation because her father only provided for her when she was in need of support. As I noted above, at the time of the decedent's death, Appellant was not dependent. She and her husband were the providers for her family.

¶ 8 In conclusion, I feel that Appellant failed to establish pecuniary loss and, therefore, was not entitled to receive Wrongful Death proceeds pursuant to 42 Pa.C.S.A. § 8301. Accordingly, I would affirm the Orphans' Court finding that Appellant did not establish a pecuniary loss.