J-A07041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BETTY WELLES CAMPBELL, EXECUTRIX OF THE ESTATE OF SAMUEL P. CAMPBELL, SR., AND BETTY WELLES CAMPBELL, IN HER OWN RIGHT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.O. SMITH CORPORATION, IN ITS OWN RIGHT AND AS SUCCESSOR IN INTEREST TO THE CLARK CONTROLLER COMPANY AND A.O. SMITH CORPORATION; A.W. CHESTERTON COMPANY; AGCO CORPORATION, AS SUCCESSOR IN INTEREST TO ALLIS CHALMERS CORPORATION; AIR & LIQUID SYSTEMS CORPORATION, AS SUCCESSOR BY MERGER TO BUFFALO PUMPS, INC.; AJAX MAGNETHERMIC CORPORATION; ALLIED GLOVE CORPORATION; AMERICAN OPTICAL CORPORATION; AMERICAN STANDARD COMPANY, INC.; ARMSTRONG INTERNATIONAL, INC., ARMSTRONG PUMPS, INC.; AQUA-CHEM, INC., CLEAVER-BROOKS DIVISION; AURORA PUMP COMPANY; BEAZER EAST, INC. IN ITS OWN RIGHT AND AS SUCCESSOR TO KOPPERS COMPANY, INC. AND OTHER RELATED COMPANIES INCLUDING THIEM CORPORATION, BEAZER USA, INC., AND BEAZER, PLC; BLACKMER PUMP COMPANY; BW/IP INTERNATIONAL INC., F/K/A BORG WARNER INDUSTRIAL PRODUCTS, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO BYRON JACKSON PUMPS; CASHCO, INC.; CATALYTIC CONSTRUCTION COMPANY; CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS | |

CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION; CHAMPLAIN CABLE CORPORATION, AS SUCCESSOR IN INTEREST TO HERCULES INC; COLUMBUS MCKINNON; COMMONWEALTH EDISON COMPANY; COPES-VULCAN, INC; CRANE CO.; CROWN CORK & SEAL COMPANY; DEZURIK, INC.; DRAVO CORPORATION; DURAMETALLIC CORPORATION; EATON CORPORATION, AS SUCCESSOR IN INTEREST TO CUTLER HAMMER, INC. EICHLEAY CORPORATION; ELECTROLUX HOME PRODUCTS; ELSA BENSON, INC; EXELON CORPORATION; FLOWSERVE U.S., INC., F/K/A FLOWSERVE FSD CORPORATION, AS SUCCESSOR TO DURCO INTERNATIONAL, DURIRON COMPANY AND DURAMETALLIC; FMC CORPORATION, INDIVIDUALLY AND ON BEHALF OF ITS FORMER PEERLESS PUMPS; FOSECO, INC.; FOSTER WHEELER CORPORATION; GENERAL CABLE CORPORATION; GEORGIA PACIFIC CORPORATION; GENUINE PARTS COMPANY; GOULDS PUMPS, INC; GREENE TWEED & COMPANY; GRINNELL LLC; HEDMAN RESOURCES LIMITED; HONEYWELL, INC., HONEYWELL INTERNATIONAL, INC., FORMERLY KNOWN AS ALLIED SIGNAL, INC., AS SUCCESSOR IN INTEREST TO THE BENDIX CORPORATION; IMO INDUSTRIES, INC., F/K/A IMO DELAVAL, INC., F/K/A TRANSAMERICAN DELAVAL, INC., F/K/A DELAVAL TURBINE, INC., DELAVAL TURBINE, INC., DEVALCO CORPORATION; INDUSTRIAL HOLDINGS CORPORATION F/K/A CARBORUNDUM COMPANY; INGERSOLL RAND; INSUL COMPANY, INC.; ITT CORPORATION, F/K/A ITT INDUSTRIES; JOY TECHNOLOGIES F/K/A JOY

MANUFACTURING COMPANY D/B/A JOY MANUFACTURING COMPANY, INC; KAISER GYPSUM COMPANY, INC.; MALLINCKRODT US LLC, IN ITS OWN RIGHT AND AS SUCCESSOR IN INTEREST TO IMCERA GROUP, INC., AND INTERNATIONAL MINERALS AND CHEMICAL CORPORATION, AND AS SUCCESSOR IN INTEREST TO E.J. LAVINO; MARLEY COOLING TOWER; MCCANN SHIELDS PAINT COMPANY; MCCARLS, INC.; MCJUNKIN RED MAN CORPORATION, IN ITS OWN RIGHT AND AS SUCCESSOR IN INTEREST TO MCJUNKIN CORPORATION; MET-PRO CORPORATION AND ITS DEAN PUMP DIVISIONL METROPOLITAN LIFE INSURANCE COMPANY A/K/A METROPOLITAN INSURANCE COMPANY; MILWAUKEE VALVE COMPANY; MINE SAFETY APPLIANCE COMPANY; MINNOTTE CONTRACTING CORPORATION; MORGAN ENGINEERING, IN ITS OWN RIGHT AND AS SUCCESSOR IN INTEREST TO ALLIANCE MACHINE COMPANY; NAGLE PUMPS, INC; OAKFABCO, INC.; OGLEBAY NORTON COMPANY, AND ITS DIVISION FERRO ENGINEERING; OWENS-ILLINOIS, INC.; PHELPS DODGE INDUSTRIES, INC; POWELL VALVE COMPANY; POWER PIPING; PREMIER REFRACTORIES, INC., F/K/A ADIENCE, INC, SUCCESSOR IN INTEREST TO ADIENCE COMPANY, LP, AS SUCCESSOR TO BMI, INC.; RILEY STOKER CORPORATION; ROCKWELL AUTOMATION, INC., IN ITS OWN RIGHT AND AS SUCCESSOR IN INTEREST TO ALLEN BRADLEY; SAFETY FIRST INDUSTRIES, INC., IN ITS OWN RIGHT AND AS SUCCESSOR IN INTEREST TO SAFETY FIRST SUPPLY, INC.; SAINT-GOBAIN ABRASIVES, INC., FORMERLY KNOWN AS NORTON COMPANY;

SARGENT & LUNDY, LLC; SPIRAX
SARCO, INC; SQUARE D COMPANY;
TASCO INSULATION, INC., F/K/A/ THE
ASBESTOS SERVICE COMPANY; THE
ELECTRIC CONTROLLER AND
MANUFACTURING COMPANY; THIEM
CORPORATION, AND ITS DIVISION,
UNIVERSAL REFRACTORIES; TRECO
CONSTRUCTION SERVICES, INC., F/K/A
THE RUST ENGINEERING COMPANY;
TYCO FLOW CONTROL COMPANY, LLC AS
SUCCESSOR IN INTEREST TO CROSBY
VALVE; UNIFRAX CORPORATION F/K/A
CARBORUNDUM; UNION CARBIDE
CORPORATION AND ITS LINDE
DIVISION; UNITED CONVERYOR
CORPORATION; UNITED STATES STEEL
CORPORATION; WASHINGTON GROUP
INTERNATION, F/K/A RAYTHEON
ENGINEERS AND CONTRACTORS, INC.,
AND ALL ITS DOMESTIC SUBSIDIARIES,
INCLUDING THE BADGER COMPANY,
INC., WHITING CORPORATION; YARWAY
CORPORATION; YEOMANS CHICAGO
CORPORATION, IN ITS OWN RIGHT AND
AS SUCCESSOR IN INTEREST TO
MORRIS PUMPS, INC., ZURN
INDUSTRIES, INC., A/K/A ERIE CITY
IRON WORKS

APPEAL OF: MARK CAMPBELL, SAMUEL
CAMPBELL JR., THOMAS CAMPBELL,
CHRISTINE NOONAN AND DEBORAH
SULLIVAN

No. 663 WDA 2015

Appeal from the Order April 2, 2015
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-11-025382

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

- 4 -

J-A07041-16

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 25, 2016**

Appellants Mark Campbell, Samuel Campbell, Jr., Thomas Campbell, Christine Noonan, and Deborah Sullivan[1] appeal from the order of the Court of Common Pleas of Allegheny County holding that Betty Welles Campbell is the only compensable wrongful death beneficiary in the underlying asbestos action. After careful consideration, we affirm.

In 2011, after receiving a diagnosis of malignant mesothelioma in August 2010, Samuel Campbell, Sr. ("Decedent") instituted an asbestos action against two dozen manufacturers of asbestos-containing products ("asbestos action").[2] Decedent died testate on May 10, 2012, leaving his entire estate to his wife, Betty Welles Campbell ("Widow"). In June 2012, Widow was appointed executrix of Decedent's estate. An amended complaint in the asbestos action then substituted Widow for Decedent as plaintiff and added a wrongful death claim.

In addition to Widow, Decedent was survived by five adult children: Mark Campbell, Samuel Campbell, Jr., Thomas Campbell, Christine Noonan,

_____

[1] Intervenors in the underlying asbestos action.

[2] This matter's caption lists all defendants from the underlying matter followed by a notation that this is an appeal filed by Appellants, who are Decedent's children.

and Deborah Sullivan ("Children" or "Appellants").[3] The amended complaint in the asbestos action named Widow and Children as wrongful death beneficiaries. Widow failed to provide Children with notice of either the wrongful death claim or the probate of Decedent's estate.

The asbestos action settled on September 19, 2012.[4] The estate took control of all settlement proceeds without dividing or otherwise allocating them between the estate's survivorship action and the death beneficiaries' wrongful death action.

Widow later learned Children intended to bring an asbestos-based lawsuit in Illinois. In March 2014, Widow, through counsel, informed Children of the prosecution and resolution of Decedent's asbestos action. In May 2014, Widow offered to arrange a hearing before a judge to determine whether Children were death beneficiaries entitled to take in the wrongful death settlement amounts. Children did not respond, but instead filed suit

_____

[3] Widow was Decedent's second wife. All Decedent's children were the result of his first marriage. A sixth child, a son named Michael, predeceased Decedent.

[4] During his lifetime, Decedent had settled with, and received settlement funds from, two of the twenty-four (24) defendants in the asbestos action. The remaining twenty-two (22) defendants settled after Decedent's death, with the final defendants settling on September 19, 2012, the eve of trial. The lawsuit was not discontinued at that time, however, as additional motions continued to be filed for more than a year regarding the settlements.

against Widow and her counsel in Blair County, Pennsylvania, in September of 2014.

Thereafter, in Allegheny County, Widow filed a Petition to Approve Settlement of Wrongful Death and Survival Action and for Allocation of Settlement Proceeds ("settlement petition") to determine, *inter alia*, whether Children qualified as wrongful death beneficiaries. On December 9, 2014, the trial court held a hearing on the settlement petition. Widow, Widow's counsel, and two of the Children testified. Children requested the trial court leave the record open to allow for the submission of additional testimony from the remaining Children to be taken by deposition. The trial court granted the request, and the testimony of the remaining Children was taken by deposition on January 15, 2015.

On February 17, 2015,[5] Children filed cross-petitions to strike the settlement petition and to remove Widow as the plaintiff in the underlying asbestos action.

On February 24, 2015, Children filed an additional action in Blair County seeking the removal of Widow as executrix of Decedent's estate.

_____

[5] Although Children actually filed their cross-petitions on March 31, 2015, on March 12, 2015, the trial court entered an order instructing that the cross-petitions, when filed, would be listed as filed on February 17, 2015, *nunc pro tunc*.

On February 27, 2015, Widow filed a motion in Allegheny County pursuant to Pa.R.C.P. 213.1[6] to consolidate the Allegheny and Blair County actions and stay the Blair County action. On March 10, 2015, the trial court granted the motion, consolidating the actions and staying the Blair County action.

On April 2, 2015, the trial court granted the settlement petition, holding that Widow was the only wrongful death beneficiary entitled to recover from the wrongful death claim proceeds in this matter.[7] Children appealed on April 23, 2015.

Children purport to raise the following three claims for review:

1. Whether the [t]rial [c]ourt can entertain a wrongful death petition for a case marked settled when funds have already been disbursed to [Widow], lien holders and her attorneys?

_____

[6] PaR.C.P. 213.1 provides as follows:

(a) In actions pending in different counties which involve a common question of law or fact or which arise from the same transaction or occurrence, any party, with notice to all other parties, may file a motion requesting the court in which a complaint was first filed to order coordination of the actions. Any party may file an answer to the motion and the court may hold a hearing.

(b) The court in which the complaint was first filed may stay the proceedings in any action which is the subject of the motion.

Pa.R.C.P. No. 213.1.

[7] The order also apportioned 85% of the asbestos recovery to the estate's survival claim and 15% to the wrongful death claim.

2. Whether an executor of an estate should be removed when she fails to give notice of probate of the estate, notice of a wrongful death and survival action and notice of the settlement of a wrongful death action to beneficiaries?

3. Whether it is sufficient to show loss of services, companionship, comfort, society and guidance to be entitled to share in damages for wrongful death?

Children's Brief, p. 4.

This Court's standard and scope of review in an appeal from a non-jury verdict is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*J.J. DeLuca Co. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa.Super.2012) (citation omitted). Further,

[w]e will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

*Id.* (citation omitted).

Initially, Children argue the trial court erred by entertaining the settlement petition because the matter was effectively discontinued and therefore could be re-opened only by a petition to strike off the

discontinuance pursuant to Pa.R.C.P. 229(c).[8]  ***See*** Children's Brief, pp. 17-

21.  Otherwise stated, Children argue that, because Widow had already

received all and distributed some settlement funds from the asbestos action,

there was nothing for the trial court to approve, and so the matter was

discontinued.  ***Id.***  This is incorrect.

In relevant part, the Probate, Estates, and Fiduciaries Code states as

follows:

**§ 3323. Compromise of controversies**

**(a) In general.--**Whenever it shall be proposed to compromise
or settle any claim, whether in suit or not, by or against an

_____

[8] Pa.R.C.P. 229 provides:

**Rule 229. Discontinuance**

(a) A discontinuance shall be the exclusive method of voluntary
termination of an action, in whole or in part, by the plaintiff
before commencement of the trial.

(b)(1) Except as otherwise provided in subdivision (b)(2), a
discontinuance may not be entered as to less than all defendants
except upon the written consent of all parties or leave of court
upon motion of any plaintiff or any defendant for whom plaintiff
has stipulated in writing to the discontinuance.

(2) In an action governed by Rule 1042.3, a plaintiff may enter a
discontinuance as to a defendant if a certificate of merit as to
that defendant has not been filed.

(c) The court, upon petition and after notice, may strike off a
discontinuance in order to protect the rights of any party from
unreasonable inconvenience, vexation, harassment, expense, or
prejudice.

Pa.R.C.P. 229.

estate, or to compromise or settle any question or dispute concerning the validity or construction of any governing instrument, or the distribution of all or any part of any estate, or any other controversy affecting any estate, the court, on petition by the personal representative or by any party in interest setting forth all the facts and circumstances, and after such notice as the court shall direct, aided if necessary by the report of a master, may enter a decree authorizing the compromise or settlement to be made.

**(b) Pending court action.--**

**(1) Court order.--**Whenever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of an estate, any court or division thereof in which such action is pending and which has jurisdiction thereof may, upon oral motion by plaintiff's counsel of record in such action, or upon petition by the personal representative of such decedent, make an order approving such compromise or settlement. Such order may approve an agreement for the payment of counsel fees and other proper expenses incident to such action.

20 Pa.C.S. § 3323. Therefore, court approval and apportionment of funds between survival and wrongful death claims is required to finalize settlement of these claims, regardless of agreement and/or payment of funds. *See Schuster v. Reeves*, 589 A.2d 731, 734-35 (Pa.Super.1991) (court approval needed for settlement and apportionment of survival and wrongful death claims); *see also Moore v. Gates*, 580 A.2d 1138, 1142 (Pa.Super.1990) (same).

Contrary to Children's assessment of the facts, at the time of the settlement petition, this matter was not discontinued and was indeed

- 11 -

ongoing, despite the fact that settlement funds had been received, and a disbursement had been made to a statutory lien holder.[9] Widow currently holds the balance of the settlement funds in escrow pending the outcome of Children's wrongful death claims. Accordingly, if Children were entitled to portions of the wrongful death settlement funds, which they are not as discussed *infra*, the funds exist and remain undisbursed. Therefore, the trial court had jurisdiction to approve and apportion the asbestos settlement proceeds without need for a Pa.R.C.P. 229(c) petition to strike off discontinuance.[10]

The crux of the instant matter is Children's third claim concerning whether the trial court properly ruled Children were not entitled to any portion of the wrongful death beneficiary portion of the asbestos settlements.

A survival action under 42 Pa.C.S. § 8302 involves the prosecution of a suit by the decedent's estate, to benefit the estate, against tortfeasors for claims that the decedent could have pursued during his/her lifetime. *See* ***Frey v. Pennsylvania Elec. Co.***, 607 A.2d 796 (Pa.Super.1992). On the other hand, wrongful death claims under 42 Pa.C.S. § 8301 allow certain designated relatives of the decedent to recover for personal damages

_____

[9] The Department of Veterans' Affairs was paid for medical care.

[10] Thus, the trial court's April 2, 2015 order was not an "advisory opinion," as Children termed it. Children's Brief, pp. 20, 21.

resulting from the decedent's death. ***See Guiton v. Pennsylvania Nat. Mut. Cas. Ins. Co.***, 447 A.2d 284 (Pa.Super.1982). An estate executrix may bring both survival actions on behalf of the estate and wrongful death actions on behalf of herself and enumerated individuals.

Under the Pennsylvania wrongful death statute, recovery passes to a limited group of beneficiaries, as defined by the statute:

**§ 8301. Death action**

**(a) General rule.--**An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

**(b) Beneficiaries.--**Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

**(c) Special damages.--**In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

**(d) Action by personal representative.--**If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

42 Pa.C.S. § 8301.

An action for wrongful death benefits pursuant to Section 8301(b) belongs to designated relatives and exists only for their benefit. **See Pisano**, 77 A.3d at 657 (*citing* **Moyer v. Rubright**, 651 A.2d 1139, 1141 (Pa.Super.1994)). Such claims are not derivative of the decedent's rights and do not belong to the estate. **Id.**

Our Supreme Court has made clear that, for an enumerated wrongful death beneficiary to recover on a wrongful death claim, the beneficiary must suffer a pecuniary loss. **See Gaydos v. Domabyl**, 152 A. 549, 551-552 (Pa.1930).

> Pecuniary loss has been defined to be a destruction of a reasonable expectation of pecuniary advantage from the deceased. It is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased[.]
>
> The reasonable expectation of pecuniary advantage to one standing in the family relation may be shown in many ways, but more frequently through services, food, clothing, education, entertainment, and gifts bestowed; to be reasonable, the services and gifts must have been rendered with a frequency that begets an anticipation of their continuance; occasional gifts and services are not sufficient on which to ground a pecuniary loss[.]

**Gaydos**, 152 A. at 552. An adult may recover as well as a minor. **In re Estate of Wolfe**, 915 A.2d 1197, 1200 (Pa.Super.2006) (citing **Gaydos**, 152 A. at 553). However, while a minor child is presumed to suffer pecuniary loss, an adult child must provide evidence of a pecuniary loss. **Id.**

"[G]ifts can establish the existence of pecuniary loss as long as they are given with sufficient consistency to establish that they would have continued." *Estate of Wolfe*, 915 A.2d at 1202.

This Court has succinctly distilled these wrongful death recovery pronouncements as follows:

> 1) an adult child suffering pecuniary loss from the death of a parent can recover his or her intestate portion of the proceeds of the wrongful death action; 2) the adult child is not required to live at home to recover those proceeds; and 3) pecuniary loss can be established by the existence of gifts and services from the decedent to the adult child if those gifts or services are rendered with sufficient frequency that it is reasonably certain that they would have continued had the parent not died.

*Estate of Wolfe*, 915 A.2d at 1200.

Following these pronouncements, this Court has ruled that an adult child who did not live with the decedent but maintained a close relationship and proved a consistent and continuing stream of financial benefits, support, and gifts was entitled to receive his/her intestate share of wrongful death claim proceeds. *See Estate of Wolfe*, 915 A.2d at 1201-03.

Here, the record reflects the following as to each of the Children:

• Mark Campbell received no financial support from Decedent from 2000 forward. He did not see Decedent after the diagnosis of mesothelioma because, as Mark testified, his father did not want to see him. Mark was estranged from Decedent to the point that Decedent did not invite Mark to his wedding. Mark did not go and see Decedent the final Thanksgiving before his death, despite Decedent having travelled to

Chicago, where Mark lives. Mark further testified that the extent of advice Decedent gave him was limited to subjects such as his home, garden, and relationships, and that Mark had no expectation of such advice continuing but for Decedent's death, as Decedent had effectively disowned him.

- Christine Noonan testified at the December 9, 2014 hearing that she had an excellent relationship with Decedent and that the two spoke on the phone every other day. She admitted, however, that Decedent had never helped her financially. She further testified that she did not have a close bond with her father after his marriage to Widow. Following the hearing, Christine gave a short deposition in which she again described her relationship with Decedent and explained that she missed him.[11]

- Debbie Sullivan testified to a close relationship with her father, but did not provide any examples of gifts or services she received from Decedent. The only example of advice Decedent gave her was advice about her children.

_____

[11] Widow testified that Christine's primary concern in speaking to Decedent was often the life insurance policy she had taken out on Decedent with herself as beneficiary. Christine acknowledged a life insurance policy, but explained that the 16 years of $110 monthly premium exceeded her expected payout on the policy.

- Samuel Campbell, Jr. testified he has lived in Arizona since 1998 and that, since that time, he did not once visit Decedent, and Decedent never visited him in Arizona. His testimony further revealed that, despite alleging a close relationship with Decedent, he may have only seen his father a handful of times between his mother's death in 1993 and his father's death in 2012. Sam Jr. alleged to have spoken on the phone with Decedent roughly once every month or two, discussing subjects including weather, camping, hunting, fishing, work, and grandchildren.[12]

- Thomas Campbell testified he did not visit Decedent once after his mesothelioma diagnosis. He testified Decedent provided him with no financial support or gifts, not even Christmas gifts, and never had. Tom testified that his relationship with Decedent centered around their shared interest in hunting and fishing and their shared experience as Marines. Tom testified that his father had instilled a good work ethic in him. He stated his most memorable vacations were with his father, but that those had occurred in the 1980s.

The trial court found Children did not prove pecuniary loss and that Widow was the only wrongful death beneficiary entitled to take from the

_____

[12] Widow testified the extent of the contact between the two over the final 5 years of Decedent's life consisted of approximately three phone calls initiated by Decedent to Sam Jr. She further testified that she believed this estrangement stemmed from bad blood from Sam Jr.'s youth.

wrongful death claim. **See** Findings of Fact and Conclusions of Law, April 2, 2015, pp. 4-6. The trial court further found that Decedent did not provide the Children, who are each over 50 years old and who live outside Decedent's home, with "financial support, gifts, services, or any kind of pecuniary advantage with any kind of frequency[,]" and certainly not to a point that evidenced they had any expectation of continued future benefit. **Id.** In fact, only one child – Debbie Sullivan – established any consistent contact with Decedent, but that contact was limited to telephone conversations and "conversational snippets" that the trial court determined "[did] not come close to establishing 'pecuniary loss' under the Wrongful Death Act." **Id.** at 5.

In short, after holding a hearing and receiving additional testimony on the matter, the trial court concluded that Children had been completely independent, and in one case admittedly estranged, from their father for years.[13] As a result, the trial court found Children had not proven pecuniary loss required for an enumerated wrongful death beneficiary to share in the proceeds of a wrongful death claim.[14] The trial court's findings are supported by competent evidence and are not premised on an error of law.[15]

_____

[13] The fact that Decedent's will favored Widow over Children only furthers this conclusion.

[14] Children correctly note that recovery under the wrongful death statute is not dependent on the wishes of the deceased in a will or otherwise. **See** Children's Brief, p. 31. The truth of this proposition does not save Children's
*(Footnote Continued Next Page)*

Children's remaining claim, their second, is ancillary to the determination regarding their entitlement to the wrongful death claim proceeds. They claim they were entitled to notice of the wrongful death claims and the probate of the estate, and that they were wronged by Widow's failure to provide such notices. Children claim that the trial court should have removed Widow as the wrongful death claim plaintiff and sanctioned both Widow and her counsel for the "egregious violations of the laws and rule" that "have gone entirely unpunished[,]" and which represent "the height of prejudice and unfairness." Children's Brief, p. 18. Children are incorrect.

"Our standard of review of issues concerning sanctions is one of abuse of discretion by the trial court." *ACE Am. Ins. Co. v. Underwriters at Lloyds & Companies*, 939 A.2d 935, 945 (Pa.Super.2007), *aff'd*, 971 A.2d 1121 (Pa.2009).

*(Footnote Continued)* ───────────────────

claim, however. To recover on a wrongful death claim, Children still must prove pecuniary loss, which they failed to do.

[15] Children rely on *Rettger v. UPMC Shadyside*, 991 A.2d 915 (Pa.Super.2010), for the proposition that pecuniary loss is not to be equated with financial dependence. *See* Children's Brief, pp. 34-35. *Rettger* involved an award of wrongful death benefits to parents of a 24-year old son with whom, in addition to receiving actual services from, they had a profound relationship beyond anything any of the Children maintained with Decedent. Thus, to the extent *Rettger* can be properly read as allowing wrongful death recovery based on losses beyond, or differing from, strict financial dependence, the case is readily, easily, and wholly distinguishable from the relationships involved in the instant matter.

Indeed, Children are correct that Widow should have timely notified them about the prosecution of the wrongful death claims. Widow concedes as much. **See** Widow's Brief, p. 31. However, as discussed **supra**, Children were not entitled to share in the proceeds of the wrongful death claim. Consequently, Widow's failure to notify Children of the claim was harmless. Accordingly, the trial court did not err in declining to accede in Children's request to remove Widow as plaintiff in the wrongful death action. Likewise, the trial court did not abuse its discretion by declining to impose sanctions on Widow or her counsel for this admitted error.[16]

For the foregoing reasons, we affirm the order of the Court of Common Pleas of Allegheny County holding that Betty Welles Campbell is the only compensable wrongful death beneficiary in the underlying asbestos action.

Order affirmed.

_____

[16] To the extent Children sought similar sanctions for Widow's failure to notify them of the probate of Decedent's estate, the instant matter is not a probate challenge and this claim is not before us. Even if properly before us, the claim lacks merit. First, notice was not required because Blair County probate procedures do not require the notification of possible intestate heirs in this scenario. Second, Decedent's will expressly left his entire estate to Widow. Children could have only taken under the will if Widow predeceased Decedent, which she did not. Accordingly, Widow's failure to notify Children of the probate of the estate was harmless error, if it was error at all.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/25/2016